APPEL, Justice.
In this case, we must determine whether the Workers’ Compensation Commissioner (commissioner) erred in concluding that light duty employment offered to an injured worker was not “suitable work” under Iowa Code section 85.33(3) (2009) because the offered employment was located 387 miles from the residence of the worker. We also must address whether substantial evidence supports the commissioner’s finding that the employee suffered a sixty percent industrial disability as a result of an on-the-job injury. The district court reversed the commissioner’s ruling on the “suitable work” issue, but affirmed the commissioner’s ruling on industrial disability. For the reasons expressed below, we reverse the district court on the “suitable work” issue, but affirm the district court on the issue of industrial disability.
I. Factual and Procedural Background.
TMC Transportation, a division of An-nett Holdings, employed Tim Neal as an over-the-road flatbed truck driver. In September 2007, Neal was sent to Michigan to pick up a load of plywood. A forklift driver loaded Neal’s flatbed with the plywood in three stacks and left tarps on top of the load. In an effort to secure the tarps, Neal climbed onto the flatbed *517 and, as he was lifting himself onto the first stack, injured his shoulder.
An MRI scan of Neal’s shoulder revealed a partial full thickness tear of the rotator cuff, tendinopathy and thickening of the rotator cuff, and hypertrophic change of the AC joint. Due to the injury, Neal’s doctor imposed work restrictions including limitations on the amount of weight Neal could lift. TMC offered Neal light-duty work in Des Moines, Iowa.
At the time, Neal resided with his wife and three children in Grayville, Illinois. Grayville is 387 miles from Des Moines. TMC offered to provide Neal a motel room while Neal worked in Des Moines. TMC also stated it would provide Neal transportation costs to allow Neal to return to Grayville every other weekend. According to Neal, if he were to participate in TMC’s light-duty program he could return home every other week to see his family. Before the injury, Neal returned home every weekend and occasionally during the week.
Neal declined TMC’s offer to perform light-duty work in Des Moines. As a result, TMC suspended Neal’s workers’ compensation benefits.
In February 2009, an arbitration hearing was held on Neal’s workers’ compensation claim. In the arbitration decision, the deputy commissioner concluded Annett Holdings properly suspended temporary disability benefits because Neal refused to accept “suitable work” as defined in Iowa Code section 85.33(3). The deputy commissioner also concluded Neal experienced a fifteen percent permanent partial disability.
Neal appealed the arbitration decision. Neal argued Annett Holdings failed to offer “suitable work” because the work was located 387 miles from Neal’s residence. Neal also challenged the finding of a fifteen percent permanent partial disability.
On appeal, the commissioner[1] modified the arbitration decision. Specifically, the commissioner concluded Annett Holdings failed to offer “suitable work” because the job was located a great distance from Neal’s residence. The commissioner observed that Neal could return home only every other weekend, whereas prior to the injury he could return home every weekend. The commissioner reasoned a worker should not be required to uproot and move to a different location, observing that “[bjeing away from the support of your wife and family, especially while recovering from a serious work injury, is not an insignificant matter.” The commissioner also found Neal suffered from a sixty percent industrial disability. Annett Holdings filed a motion to reconsider, which the commissioner denied. Annett Holdings petitioned for judicial review.
The district court affirmed in part and reversed in part. The district court affirmed the commissioner’s finding that Neal suffered a sixty percent industrial disability. The district court reversed, however, on the issue of whether Annett Holdings offered suitable work. The district court stated Iowa Code section 85.33(3) “does not define ‘suitable work’ in terms of its location; rather, ‘suitable work’ is that which is ‘consistent with the employee’s disability.’ ” Because Annett Holdings offered light-duty work consistent with Neal’s disability, the district court concluded that Neal refused suitable work and thus, forfeited his right to temporary partial, temporary total, and healing period benefits during his period of *518 refusal. Neal appealed, and Annett Holdings cross-appealed.
II. Standard of Review.
Judicial review of the decisions of the workers’ compensation commissioner is governed by Iowa Code chapter 17A. My-cogen Seeds v. Sands, 686 N.W.2d 457, 463 (Iowa 2004). A district court acts in an appellate capacity when it exercises its judicial review power. Id. When reviewing a district court’s decision “we apply the standards of chapter 17A to determine whether the conclusions we reach are the same as those of the district court. If they are the same, we affirm; otherwise, we reverse.” Id. at 464 (citation omitted).
In this case, we are asked to consider whether the commissioner erred in concluding that Annett Holdings failed to offer suitable work for purposes of Iowa Code section 85.33(3). To the extent the commissioner’s decision reflects factual determinations that are “clearly vested by a provision of law in the discretion of the agency,” we are bound by the commissioner’s findings of fact if they are supported by substantial evidence. Schutjer v. Algo-na Manor Care Ctr., 780 N.W.2d 549, 557 (Iowa 2010) (citation and internal quotation marks omitted); Meyer v. IBP, Inc., 710 N.W.2d 213, 219 (Iowa 2006). Further, the commissioner’s application of law to the facts as found by the commissioner will not be reversed unless it is “irrational, illogical, or wholly unjustifiable.” Lakeside Casino v. Blue, 743 N.W.2d 169, 173 (Iowa 2007) (citation and internal quotation marks omitted).
 The question of whether an employer offered suitable work is ordinarily a fact issue. See Schutjer, 780 N.W.2d at 557, 559; McCormick v. N. Star Foods, Inc., 533 N.W.2d 196, 199 (Iowa 1995). Whether the commissioner considered an improper factor in reaching its factual determination regarding suitability, however, is a question of law. Cf. Pac. Mills v. Dir. of Div. of Emp’t Sec., 322 Mass. 345, 77 N.E.2d 413, 415 (Mass.1948).
With respect to questions of law, we have stated that no deference is given to the commissioner’s interpretation of law because the “interpretation of the workers’ compensation statutes and related case law has not been clearly vested by a provision of law in the discretion of the agency.” Schutjer, 780 N.W.2d at 558 (citation and internal quotation marks omitted). Shortly after Schutjer, this court decided Renda v. Iowa Civil Rights Commission, 784 N.W.2d 8 (Iowa 2010), which clarified and refined our approach to determining whether an agency has been delegated the authority to interpret a statute.
In Renda, we explained that “each case requires a careful look at the specific language the agency has interpreted as well as the specific duties and authority given to the agency with respect to enforcing particular statutes.” Renda, 784 N.W.2d at 13. We give deference to the agency’s interpretation if the agency has been clearly vested with the discretionary authority to interpret the specific provision in question. Id. at 11. If, however, the agency has not been clearly vested with the discretionary authority to interpret the provision in question, we will substitute our judgment for that of the agency if we conclude the agency made an error of law. Id. at 14-15. Deference may be given to an agency’s interpretation in a specific matter or an interpretation embodied in an agency rule. Sherwinr-Williams Co. v. Iowa Dep’t of Revenue, 789 N.W.2d 417, 422-23 (Iowa 2010). Indications that the legislature has delegated interpretive authority include “rule-making authority, decision-making or enforcement authority that requires the agency to interpret the *519 statutory language, and the agency’s expertise on the subject or on the term to be interpreted.” Id. at 423.
We conclude the legislature did not vest the authority to interpret the phrase “suitable work” for purposes of Iowa Code section 85.33(3) in the workers’ compensation commission. First, the legislature has made no explicit grant of interpretive authority to the commission. See Renda, 784 N.W.2d at 11. Second, while we recognize Iowa Code section 86.8(1) creates in the commissioner a duty to “[a]dopt and enforce rules necessary to implement ... chapters 85, 85A, 85B, [86,] and 87,” the mere grant of rulemaking authority does not give an agency authority to interpret all statutory language. Renda, 784 N.W.2d at 13-14. Third, as discussed below, the concept of “suitable work” is found in similar contexts, including employment discrimination, wrongful termination, unemployment compensation, and the odd-lot doctrine. Therefore, we are not convinced “suitable work” is a specialized phrase within the expertise of the commissioner; rather, the phrase has a specialized legal meaning extending beyond the context presented in this case. Id. at 14. Consequently, we accord no deference to the interpretation of the commissioner and will substitute our own judgment if we conclude the commissioner made an error of law. Id. at 14-15; Siuiss Colony, Inc. v. Deutmeyer, 789 N.W.2d 129,133 (Iowa 2010).
III. Discussion.
A. Suitable Work. Iowa Code section 85.33(3) disqualifies an employee from receiving temporary partial, temporary total, and healing period benefits if the employer offers “suitable work” that the employee refuses. Iowa Code § 85.33(3); Schutjer, 780 N.W.2d at 559. If the employer fails to offer suitable work, the employee will not be disqualified from receiving benefits regardless of the employee’s motive for refusing the unsuitable work. See Schutjer, 780 N.W.2d at 559. We, therefore, must consider whether Annett Holdings offered Neal suitable work for purposes of Iowa Code section 85.33(3).
When interpreting a statute, we will not look beyond the express terms of the statute if the text of the statute is plain and its meaning clear. State v. Tesch, 704 N.W.2d 440, 451 (Iowa 2005). When the words of a statute are not defined by the legislature, we may refer to “prior decisions of this court and others, similar statutes, dictionary definitions, and common usage.” Gardin v. Long Beach Mortg. Co., 661 N.W.2d 193, 197 (Iowa 2003); Bemau v. Iowa Dep’t of Tramp., 580 N.W.2d 757, 761 (Iowa 1998). Iowa Code section 85.33(3) provides:
3. If an employee is temporarily, partially disabled and the employer for whom the employee was working at the time of injury offers to the employee suitable work consistent with the employee’s disability the employee shall accept the suitable work, and be compensated with temporary partial benefits. If the employee refuses to accept the suitable work with the same employer, the employee shall not be compensated with temporary partial, temporary total, or healing period benefits during the period of the refusal. If suitable work is not offered by the employer for whom the employee was working at the time of the injury and the employee who is temporarily partially disabled elects to perform work with a different employer, the employee shall be compensated with temporary partial benefits.
Iowa Code § 85.33(3). The district court looked no further than this section because, in its view, “suitable work” is de *520 fined in the statute as work that is “consistent with the employee’s disability.”
We begin our analysis of the statute by considering whether the phrase “consistent with the employer’s disability” provides a definition of the phrase “suitable work” in the statute. We conclude that it does not. The language of the statute requires that the work offered to an injured worker must be both “suitable” and “consistent with the employee’s disability” before the employee’s refusal to accept such work will disqualify him from receiving temporary partial, temporary total, and healing period benefits. See id. Otherwise, the modifier “suitable” would have no meaning and would be mere sur-plusage. In interpreting a statute, “each term is to be given effect,” Miller v. Marshall Cnty., 641 N.W.2d 742, 749 (Iowa 2002), and we “will not read a statute so that any provision will be rendered superfluous,” Thoms v. Iowa Pub. Employees’ Ret. Sys., 715 N.W.2d 7, 15 (Iowa 2006). See also State v. Osmundson, 546 N.W.2d 907, 910 (Iowa 1996); 2A Norman J. Singer & J.D. Shambie Singer, Statutes and Statutory Construction § 46:6, at 230 (7th ed. 2007) (“It is an elementary rule of construction that effect must be given, if possible, to every word, clause and sentence of a statute.” (citation and internal quotation marks omitted)).
We thus conclude that the phrase “consistent with the employee’s disability” modifies “suitable work.” The phrase “suitable work,” however, is not defined in the statute. We must breathe some life into this phrase in order to resolve the question of whether the commissioner erred in determining that the offer of light-duty employment in this case was insufficient to cut off receipt of temporary workers’ compensation benefits under the statute.
We begin our effort to understand the meaning of the phrase “suitable work” by looking at the workers’ compensation statutes in other states. Some states expressly require a consideration of the location of available work in determining an employee’s eligibility for workers’ compensation benefits. See, e.g., Nev.Rev.Stat. Ann. 616C.475(8)(a) (West, Westlaw through 2009 75th Reg. Sess. & 2010 26th Special Sess.); Or.Rev.Stat. Ann. § 656.268(4)(c)(A)-(B) (West, Westlaw through 2011 Reg. Sess.); see also La.Rev. Stat. Ann. § 23:1221(3)(c)(i) (West, West-law through 2011 1st Extraordinary & Reg. Sess.); Mich. Comp. Laws Ann. § 418.301(9)(a), (11) (West, Westlaw through P.A.2012, No. 4, of the 2012 Reg. Sess.). Nevada, for instance, requires an offer of temporary, light-duty employment to be “substantially similar to the employee’s position at the time of his or her injury in relation to the location of the employment.” Nev.Rev.Stat. Ann. 616C.475(8). Similarly, Oregon allows an employee to refuse an offer of modified employment if the offer “[Requires a commute that is beyond the physical capacity of the worker” or is at a “work site more than [fifty] miles one way from where the worker was injured.” Or.Rev.Stat. Ann. § 656.268(4)(c)(A)-(B). Further, Michigan precludes an employee from receiving wage-loss benefits if the employee receives and refuses a “bona fide offer of reasonable employment.” Mich. Comp. Laws Ann. § 418.301(9)(a). The statute states “reasonable employment” means work that is “within a reasonable distance from [the] employee’s residence.” Id. § 418.301(11). Courts in these jurisdictions have little difficulty construing their statutes to include geographic location as a factor to be considered in determining whether an employee is eligible for certain workers’ compensation benefits. See, e.g., Jones-Jennings v. Hutzel Hosp., 223 Mich.App. 94, *521 565 N.W.2d 680, 686 (1997); Amazon.com v. Magee, 121 Nev. 682, 119 P.3d 732, 735 (2005); see also Caparotti v. Shreveport Pirates Football Club, 768 So.2d 186, 191 (La.Ct.App.2000).
A number of state workers’ compensation statutes, while not expressly requiring a consideration of location, provide that refusal of suitable employment does not disqualify a claimant if the refusal is “justifiable” or “reasonable.” See, e.g., Ala. Code § 25-5-57(a)(3)(e) (West, Westlaw through 2011 Reg. Sess.); Ark.Code Ann. § 11-9-526 (West, Westlaw through 2011 Reg. Sess.); Fla. Stat. Ann. § 440.15(6) (West, Westlaw through Feb. 16, 2012 of the 2012 2nd Reg. Sess.); Ga.Code Ann. § 34-9-240(a) (West, Westlaw through 2011 Reg. & Special Sess.); Ind.Code Ann. § 22-3-3-ll(a) (West, Westlaw through 1st Reg. Sess.); N.C. Gen.Stat. Ann. § 97-32 (West, Westlaw through S.L.2012-1 of the 2011 Reg. Sess.); N.D. Cent.Code Ann. 65-05-08(7) (West, Westlaw through 2011 Reg. Sess. & Special Sess.); Tenn.Code Ann. § 50-6-207(3)(D) (West, Westlaw through 2011 1st Reg. Sess.); Va.Code Ann. § 65.2-510(A) (West, Westlaw through 2011 Reg. Sess.). In Georgia, for example, an employee who “refuses employment procured for him or her and suitable to his or her capacity” is not entitled to benefits unless the refusal was justified. Ga.Code Ann. § 34-9-240(a). The Georgia Supreme Court addressed what it meant for a refusal to be justified in City of Adel v. Wise, 261 Ga. 53, 401 S.E.2d 522 (1991). The court explained a refusal to accept work is justified if the employee would be required to relocate from his or her home. Wise, 401 S.E.2d at 525. Thus, the court concluded, “factors such as geographic relocation or travel conditions which would disrupt an employee’s life” are to be considered when determining whether an employee justifiably refused work. Id.; see also Counts v. Acco Babcock, Inc., No. 135, 1988 WL 81394, at *1 (Del.1988) (holding claimant, a resident of Delaware, was not required to relocate and to accept offer of employment in Pennsylvania).
In other jurisdictions, courts have held, in the absence of legislative direction, that the distance of available work may be considered in determining the employee’s eligibility for workers’ compensation benefits. In Joyner v. District of Columbia Department of Employment Services, 502 A.2d 1027 (D.C.1986), the court interpreted a statute providing the following:
If the employee voluntarily limits his income or fails to accept employment commensurate with his abilities, then his wages after becoming disabled shall be deemed to be the amount he would earn if he did not voluntarily limit his income or did accept employment commensurate with his abilities.
Joyner, 502 A.2d at 1029 (quoting D.C.Code § 36-308(e) (1981), currently § 32-1508(3)(V)(in) (West, Westlaw through Jan. 11, 2012)). The Joyner court observed that the statute does not expressly address “where ‘employment commensurate with [the claimant’s] abilities’ must be located to be relevant to determining whether a claimant has voluntarily limited her income or failed to accept such employment.” Joyner, 502 A.2d at 1030 (quoting D.C.Code § 36-308(c)). The Joyner court, however, upheld an agency decision declaring that the District of Columbia served as the relevant labor market for determining whether an employee disqualified himself or herself from benefits. Id. Although Joyner is not a case involving temporary disability benefits, it does stand for the broader proposition that geographic location may be considered in determining whether the availability of employment cuts off statutory workers’ compensation benefits. See also Shah v. Howard John *522 son, 140 N.C.App. 58, 535 S.E.2d 577, 583 (2000) (stating “it seems obvious that suitable employment for a person would normally be located within a reasonable commuting distance of that person’s home”).
Pennsylvania has also allowed a consideration of the distance of work in determining a claimant’s eligibility for workers’ compensation benefits in the absence of legislative direction. In Kachinski v. W.C.A.B., 516 Pa. 240, 532 A.2d 374 (1987), the Pennsylvania Supreme Court, in the absence of a statute, required suitable work to be “actually available]” in order for a modification of benefits to be effected. Kachinski, 532 A.2d at 379, superseded by statute, 77 Pa. Cons.Stat. Ann. § 512 (1996), as recognized in Bufford v. W.C.A.B., 606 Pa. 621, 2 A.3d 548, 553 n. 3 (2010). The Pennsylvania Commonwealth Court interpreted this availability requirement in Goodwill Industries of Pittsburgh v. W.C.A.B., 158 Pa.Cmwlth. 292, 631 A.2d 794 (1993).
In Goodwill, the court addressed whether a twenty-hour per week, light-duty job located thirty miles from the claimant’s home was unavailable to the claimant because it was located outside the claimant’s geographic area. Goodwill Indus. of Pittsburgh, 631 A.2d at 795. The Goodwill court held the job was unavailable because the claimant would have been required to commute three hours by bus. Id. at 796. The court explained that “cases involving relatively long commutes and relatively short work days must be examined on their individual fact patterns as deemed appropriate for a reasonable person in the position of the claimant.” Id.; see also Combs v. Kelly Logging, 115 Idaho 695, 769 P.2d 572, 574 (1989) (“It is well established, even without legislative statutory direction, that a worker who sustains an industrial accident is not required to move from his or her home to find suitable work in order to be eligible for worker’s compensation.”); Dilkus v. W.C.A.B., 543 Pa. 392, 671 A.2d 1135, 1139 (1996) (examining claimant’s residence or geographic area in determining availability of a position); Yellow Freight Sys., Inc. v. W.C.A.B., 32 Pa.Cmwlth. 147, 377 A.2d 1304, 1306 (1977) (same).
In short, it is clear that geographic proximity is commonly considered as a relevant factor in workers’ compensation statutes. Moreover, Joyner, Kaehinski, and Goodwill are substantial authority for the proposition that geographic location is an appropriate consideration in determining whether the availability of other employment is a basis for termination of workers’ compensation benefits under state statutes that are silent on the issue. The law is sufficiently developed in this regard that a leading treatise on workers’ compensation issues states that “[t]he suitability of a job ... refers to the employee’s physical capacity or ability to perform the job, or to factors such as geographic relocation or travel conditions that would disrupt the employee’s life.” 2 Modem Workers Compensation § 200.32 (Westlaw 2012).
In addition to these statutes and cases involving workers’ compensation benefits, analogy may be drawn from other areas of employment law. For example, with respect to unemployment compensation, Iowa Code section 96.5(3) states that an individual is disqualified from receiving unemployment benefits “[i]f the department finds that an individual has failed, without good cause, either to apply for available, suitable work when directed by the department or to accept suitable work when offered that individual.” Iowa Code § 96.5(3). Section 96.5(3) goes on to provide:
a. (1) In determining whether or not any work is suitable for an individual, the department shall consider the de *523 gree of risk involved to the individual’s health, safety, and morals, the individual’s physical fitness, prior training, length of unemployment, and prospects for securing local work in the individual’s customary occupation, the distance of the available work from the individual’s residence, and any other factor which the department finds bears a reasonable relation to the purposes of this paragraph.
Iowa Code § 96.5(3)(a )(1); Iowa Admin. Code r. 871 — 24.24(15)(g) (“In determining what constitutes suitable work, the department shall consider, among other relevant factors ... [distance from the available work.”); see also Arthur M. Menard, Refusal of Suitable Work, 55 Yale L.J. 134, 147 (1945) (noting suitability in context of unemployment compensation “is a relative matter in which the effect of the work upon the claimant and his normal economic activity and activity in society should be considered”). Professor Larson has noted the validity of the analogy between unemployment and workers’ compensation benefits on the issue of suitability, noting, “While there are not as many workers’ compensation cases [on the issue of suitability of employment], they seem to resemble in general effect the more numerous unemployment compensation cases on the same point.” 4 Arthur Larson & Lex K. Larson, Larson’s Workers’ Compensation Law § 85.01, at 85-1 (2000).
Further, in employment discrimination cases, an employer can meet its burden of establishing the plaintiff failed to mitigate damages by showing (1) the availability of suitable jobs that the employee could have discovered and for which the employee was qualified, and (2) that the employee failed to seek such a position with reasonable care and diligence. Sias v. City Demonstration Agency, 588 F.2d 692, 696 (9th Cir.1978). In Spagnuolo v. Whirlpool Corp., 717 F.2d 114, 119 (4th Cir.1983), the Fourth Circuit observed: “The long-settled rule in the labor area is that a wrongfully discharged employee need not accept, in mitigation of damages, employment that is located an unreasonable distance from his home.” See also Frye v. Memphis State Univ., 806 S.W.2d 170, 173 (Tenn.1991) (stating a wrongfully terminated employee need not “abandon his home or place of residence to seek other employment” to mitigate damages).
The Restatement (Second) of Agency takes a similar approach. If an employer discharges an agent in violation of the contract of employment, the agent cannot recover for damages he could have avoided by exercising due diligence. Restatement (Second) of Agency § 455 cmt. d, at 373 (1958). The comments of section 455 explain that a wrongfully discharged agent is not “necessarily obliged to accept employment at a distance from his home.” Id. The Restatement provides the following illustration:
3. P employs A, who is married, for a period of a year as a traveling salesman to cover New England, with headquarters at Boston. At the end of one month, without cause, P dismisses A. A is offered a position with another responsible house for the same territory but with headquarters in New York. It is a question for the triers of fact to determine whether or not in view of all the circumstances, including the social interests of A and his wife, A’s damages are diminished by the amount which he would have received had he accepted the New York offer.
Id. § 455 illus. 3, at 373-74. As one can see, the Restatement allows the trier of fact to consider the distance of employment from one’s home in determining whether the agent suffered damages he could have avoided. See id.; see also Hil *524 gendorf v. Hague, 293 N.W.2d 272, 276-77 (Iowa 1980) (citing Restatement (Second) of Agency section 455 with approval).
We have applied the generally recognized geographic concept in employment law in other workers’ compensation settings. For instance, in Guyton v. Irving Jensen Co., 373 N.W.2d 101,105 (Iowa 1985), we recognized the “odd-lot doctrine.” Under the doctrine, an employee is considered to have suffered total disability if the worker can only perform work “so limited in quality, dependability, or quantity that a reasonably stable market for them does not exist.” Guyton, 373 N.W.2d at 105 (citation and internal quotation marks omitted). In Guyton, we explained:
[W]hen a worker makes a prima facie case of total disability by producing substantial evidence that the worker is not employable in the competitive labor market, the burden to produce evidence of suitable employment shifts to the employer. If the employer fails to produce such evidence and the trier of fact finds the worker does fall in the odd-lot category, the worker is entitled to a finding of total disability.
Id. at 106 (emphasis added). “Simply put,” we observed in Second Injury Fund of Iowa v. Shank, 516 N.W.2d 808, 815 (Iowa 1994), “the question is this: Are there jobs in the community that the employee can do for which the employee can realistically compete?” For purposes of the odd-lot doctrine, then, we have held that an employee need not look for a position outside the employee’s “competitive labor market” to establish he suffers a total disability. Id.; see also See v. Wash. Metro. Area Transit Auth., 36 F.3d 375, 381 (4th Cir.1994) (stating “it is by now well-established that, in order to defeat a claim for benefits as a result of an alleged permanent total disability, the burden is on the employer to prove the existence of a suitable job presently available to the claimant in the community in which he lives ” (citation and internal quotation marks omitted)); New Orleans (Gulfwide) Stevedores v. Turner, 661 F.2d 1031, 1042 (5th Cir.1981) (holding “job availability” should consider whether there are “jobs reasonably available in the community for which the claimant is able to compete”). In light of the decisions of other courts addressing similar issues, analogous statutes, and prior decisions of this court, we conclude the commissioner may consider distance of available work from the claimant’s home in determining whether an employer has offered “suitable work” for purposes of Iowa Code section 85.33(3).
Given our holding on the legal issue of whether geographic proximity is a factor to be considered, we now turn to the question of whether the commissioner’s factual decision that the proffered employment was not suitable is supported by substantial evidence.[2] We acknowledge *525 that the evidence in the record could have led a reasonable fact finder to come to a conclusion different than that reached by the commission. The issue before us, however, is not whether the employer had a substantial basis for asserting the offered job was, in fact, “suitable.” The question is whether the determination of the commissioner should be affirmed.
We conclude that the commissioner committed no legal error and that substantial evidence supports the commissioner on the issue. The distance between the proffered work and Neal’s residence was 387 miles. Although Neal was an over-the-road truck driver, which often required him to spend extended periods of time away from home, Neal testified that before the injury he ordinarily spent each weekend at home with his wife and three children, and occasionally he returned home during the week. Had Neal accepted the work in Des Moines, he would have only been able to return home every other weekend — cutting his time at home in half. As observed by the commissioner, “Being away from the support of your wife and family, especially while recovering from a serious work injury, is not an insignificant matter.” Further, there is no evidence in the record establishing that Neal agreed as a condition of employment to any relocation that Annett Holdings might require. See Serwetnyk v. USAir, Inc., 249 A.D.2d 631, 671 N.Y.S.2d 537, 538 (App.Div.1998). Based on the evidence, we are satisfied substantial evidence supports the commissioner’s findings of fact. See Litzinger v. W.C.A.B., 731 A.2d 258, 262-63 (Pa.Commw.Ct.1999) (holding as a matter of law that light-duty work offered to former over-the-road truck driver was “totally unreasonable” when work was located 116 miles away from claimant’s residence even though the employer offered to provide a motel room).
B. Permanent Partial Disability Benefits. In its cross-appeal, An-nett Holdings argues the district court erred in upholding the commissioner’s finding that Neal suffered a sixty percent permanent partial disability. The question is a mixed one of law and fact. Larson Mfg. Co., Inc. v. Thorson, 763 N.W.2d 842, 856 (Iowa 2009). In reviewing an agency’s finding of fact for substantial evidence, courts must engage in a “fairly intensive review of the record to ensure that the fact finding is itself reasonable.” Wal-Mart Stores, Inc. v. Caselman, 657 N.W.2d 493, 499 (Iowa 2003). We do not, however, engage in a scrutinizing analysis, “for, if we trench in the lightest degree upon the prerogatives of the commission, one encroachment will breed another, until finally simplicity will give way to complexity, and informality to technicality.” Midwest Ambulance Serv. v. Ruud, 754 N.W.2d 860, 866 (Iowa 2008) (citation and internal quotation marks omitted).
In our fairly intensive review, we view the record as a whole, which includes a consideration of evidence supporting the challenged finding as well as evidence detracting from it. Iowa Code § 17A.19(10)(/')(3); Dawson v. Iowa Bd. of Med. Exam’rs, 654 N.W.2d 514, 518 (Iowa 2002). Evidence is not insubstantial merely because a contrary inference is supported by the record. Missman v. Iowa *526 Dep’t of Transp., 653 N.W.2d 363, 367 (Iowa 2002). Because the challenge to the agency’s industrial disability determination challenges the agency’s application of law to facts, we will not disrupt the agency’s decision unless it is “irrational, illogical, or wholly unjustifiable.” Larson Mfg. Co., Inc., 763 N.W.2d at 857.
An employee who suffers a “permanent disability” is entitled to compensation. Iowa Code § 85.34. The amount of compensation for an unscheduled injury resulting in permanent partial disability is based on the employee’s earning capacity. Broadlawns Med. Ctr. v. Sanders, 792 N.W.2d 302, 306 (Iowa 2010). Earning capacity is determined by an evaluation of several factors, including “functional disability ... age, education, qualifications, experience, and inability to engage in similar employment.” Deutmeyer, 789 N.W.2d at 137-38 (citation and internal quotation marks omitted). Personal characteristics of the employee that affect em-ployability may be considered. Ehlinger v. State, 237 N.W.2d 784, 792 (Iowa 1976). In determining industrial disability, the commissioner “is not required to fix disability with precise accuracy.” Myers v. F.C.A. Servs., Inc., 592 N.W.2d 354, 357 (Iowa 1999); see Klein v. Furnas Elec. Co., 384 N.W.2d 370, 374 (Iowa 1986) (observing in some cases it is impossible to determine extent of industrial disability with precise accuracy).
The commissioner found Neal to have suffered a sixty percent industrial disability. The commissioner explained:
Claimant is 47 years old. His age would make retraining difficult. Although Neal has minor residual discomfort, his loss of lifting capacity and formal impairment ratings show that he has quite significant industrial loss. He is unable to return to flatbed truck driving, the type of work for which he is best suited given his work history. He cannot return to any driving duties that would require heavy or medium lifting. His limitations prevent a return to construction, other than as a non-working supervisor. Considering all factors of industrial disability as set forth above, it is found that as a result of the injury sustained September 13, 2007, Tim Neal has experienced diminution of earning capacity of sixty percent (60%).
Substantial evidence supports these findings of fact.
We have previously held the age of forty-seven is a factor that the commissioner may consider in finding industrial disability. See Trade Prof'ls, Inc. v. Shriver, 661 N.W.2d 119, 123 (Iowa 2003) (noting claimant’s age of forty-seven in concluding substantial evidence supported the commissioner’s findings); see also Second Injury Fund of Iowa v. Nelson, 544 N.W.2d 258, 266 (Iowa 1995) (reasoning age of sixty consistent with greater disability); Diederich v. Tri-City Ry., 219 Iowa 587, 594, 258 N.W. 899, 902 (1935) (stating it would be difficult for a fifty-nine-year-old person to find employment in a new field). The commissioner did not error in considering age to be a factor in this case.
As pointed out by the commissioner, Neal has limited education. The commissioner could properly consider his high school education and lack of specialized training as a factor that could lessen his earning ability. Deutmeyer, 789 N.W.2d at 138 (reasoning that lack of post-high school education was a factor supporting sixty percent industrial disability).
Neal’s absence from work during the healing period is a factor that could affect employability. A reasonable commissioner could conclude that many months absence from the job could be looked at with skepticism by potential employers.
*527 There is evidence in the record tending to show that Neal is less competitive in the employment market because of his permanent injuries. Neal drove a flatbed truck for a number of years prior to his injury, but he can no longer drive a flatbed truck because he would be required to perform lifting beyond his postinjury abilities. A Functional Capacity Evaluation report, which concluded Neal’s “physical capabilities and tolerances to function between the Light-Medium and Medium Categories of work,” supports the commissioner’s finding in this regard. Neal has medical restrictions on what he can lift. Neal also explained that, although he worked in construction before the injury, his postinjury physical limitations preclude him from engaging in any construction except as a nonworking supervisor.
There is, of course, countervailing evidence in the record. For example, evidence in the record tends to indicate that Neal may be able to continue his career as a truck driver, albeit not as a flatbed truck driver, within his physical restrictions. Nevertheless, earning capacity contemplates more than a determination of what the employee “can or cannot do.” Shank, 516 N.W.2d at 815 (citation and internal quotation marks omitted). The inquiry requires a consideration of the employee’s actual employability, namely, the extent to which jobs are available for which Neal can realistically compete as a forty-seven year old, high-school educated person with work experience generally limited to truck driving, construction, and oil pumping when he suffers from a functional impairment of the upper extremity that restricts his employability to light-medium and medium categories of work. See id. Also, factual findings are not insubstantial merely because evidence supports a different conclusion or because we may have reached a different conclusion. See Arndt v. City of Le Claire, 728 N.W.2d 389, 393 (Iowa 2007); Missman, 653 N.W.2d at 367. Further, in considering findings of industrial disability, we recognize that the commissioner is routinely called upon to make such assessments and has a special expertise in the area that is entitled to respect by a reviewing court. See Lithcote Co. v. Ballenger, 471 N.W.2d 64, 68 (Iowa Ct.App.1991).
The question before us is whether the evidence supports the findings the commissioner actually made. Terwilliger v. Snap-On Tools Corp., 529 N.W.2d 267, 271 (Iowa 1995). We conclude that it does. We also conclude the commissioner’s application of these facts to the law is not irrational, illogical, or wholly unjustifiable.
IV. Conclusion.
For the reasons expressed above, we conclude the commissioner did not err in finding Annett Holdings failed to offer Neal suitable work for purposes of Iowa Code section 85.33(3). We also hold the commissioner’s findings of fact with respect to the extent of Neal’s industrial disability are supported by substantial evidence and the commissioner’s application of those facts in holding Neal suffered a sixty percent industrial disability is not irrational, illogical, or wholly unjustifiable. We, therefore, reverse the judgment of the district court in part and affirm in part.
AFFIRMED IN PART AND REVERSED IN PART.
All justices concur except CADY, C.J., WATERMAN and MANSFIELD, JJ., who dissent.

. The appeal in this case was decided on behalf of the commissioner by a deputy commissioner. For the purposes of this proceeding, the decision maker on appeal is referred to as the commissioner.

. While there is ample authority on the general issue that geographic proximity should be a factor in evaluating the "suitability" of employment offered by employers, there is little caselaw applying this general principle where an agency entitled to substantial deference in fact finding determines that an offered job is not suitable with a record similar to that developed in this case. While the dissent has found a lower court opinion from Pennsylvania in the general subject area, Trout v. W.C.A.B., 836 A.2d 178 (Pa.Commw.Ct.2003), this case is not on point. In Trout, the court found that the final decision of the workers’ compensation authorities denying benefits could not be affirmed as a matter of law. Trout, 836 A.2d at 183-85. Footnote twelve of the opinion states that if the offer of employment is "within the geographic area where others in the same community as Claimant would accept employment, the claimant’s preference is irrelevant, and the job is available geographically." Id. at 184 n. 12. Various cases are cited in support of the *525 proposition that the final workers' compensation decision denying benefits was so far out of bounds that it could not be affirmed as a matter of law. See id. Trout, which establishes under Pennsylvania law the outer boundaries of agency discretion in denying a claim, cannot be turned upside down and used as authority to establish the inner boundary of agency discretion where the agency sides with the employee and affirms the claim.