# IN THE COURT OF APPEALS OF IOWA

No. 15-2007
Filed November 9, 2016

**BRIDGESTONE/FIRESTONE and**
**OLD REPUBLIC INSURANCE,**
        Petitioners-Appellants,

**vs.**

**MARLON JACKMAN,**
        Respondent-Appellee.

_____

Appeal from the Iowa District Court for Polk County, Rebecca Goodgame

Ebinger, Judge.

An employer appeals the district court's decision affirming the Iowa

Workers' Compensation Commissioner's award of benefits.  **AFFIRMED.**

Timothy W. Wegman and Joseph M. Barron of Peddicord, Wharton,

Spencer, Hook, Barron & Wegman, L.L.P., West Des Moines, for appellants.

Martin Ozga of Neifert, Byrne & Ozga, P.C., West Des Moines, for

appellee.

Considered by Potterfield, P.J., and Mullins and McDonald, JJ.

**MULLINS, Judge.**

Bridgestone/Firestone and Old Republic Insurance (Firestone) appeal the district court's decision affirming the Iowa Workers' Compensation Commissioner's award of benefits to Marlon Jackman. Firestone disputes only the commissioner's award of permanent total disability, alleging Jackman remains employable. We affirm.

## I.      Background Facts and Proceedings

We adopt the district court's recitation of the facts as our own:

> [Jackman] completed school through 10th grade as a below-average student and later received his GED while enlisted in the Marine Corps. In August 1988, Jackman began working for Firestone as a tire builder. In 2001, Jackman moved to the final inspection department because of left elbow problems. In the final inspection department, Jackman prepared tires for shipment, which involved stacking tires on pallets. In May 2007, Jackman was compensated for a worker's compensation claim for a hernia injury. As part of this claim, Jackman saw Dr. Kuhnlein who assessed [Jackman] had a 5% whole person impairment and imposed work restrictions.
>
> In February or March of 2011, Jackman states he began to experience neck problems, accompanied by low back pain. Jackman states that around this time Firestone increased the rate of tire production [significantly]. Jackman visited Dr. Troll on April 8, 2011, who opined Jackman's upper thoracic pain was not a work-related problem. Jackman then visited Dr. Rabang, his family physician, who performed an MRI and referred Jackman to Dr. Hirschl, a neurosurgeon. Dr. Hirschl determined Jackman had "a significant amount of degenerative changes in basically his entire cervical spine," notably disk bulging and foraminal narrowing of C5-6 and C6-7. Dr. Hirschl and Jackman discussed surgery but decided to treat the condition through therapy. Jackman was off work from June 30, 2011, until October 2011, while he received neck treatment from Dr. Hirschl and Dr. Rabang along with treatment from Dr. Pederson, a physiatrist, and Nurse Practitioner Ann Bartels. In July 14, 2011, Dr. Rabang diagnosed Jackman with lumbar disk disease and right lower extremity radiculopathy.
>
> Upon return to work in October 2011, Jackman transferred departments and worked on computers. His work involved setting and shutting off presses and inputting work orders. Dr. Pederson

imposed a permanent work restriction of lifting no greater than 15 pounds and no repetitive bending and twisting, affirmed by Dr. Troll. In December 2011, Firestone shut down Jackman's department, and Jackman moved to an inventory position which involved scanning materials. On April 11, 2012, Jackman performed his last reported day of work and was thereafter placed on accident and sickness leave. In November 2012, Jackman applied for early retirement due to disability, and his request was approved in March 2013.

On February 24, 2012, Jackman filed a Petition in Arbitration with the Iowa Workers' Compensation Commission for [] alleged neck and back injuries suffered on June 30, 2011. As part of the claim, both parties obtained independent medical evaluations and vocational reports. Dr. Kuhnlein evaluated Jackman on August 14, 2012, and diagnosed degenerative disc disease of the cervical spine with chronic neck pain and spondylolisthese of L4-S1 with chronic low back pain and complaints of lower extremity symptoms without true radiculopathy. Dr. Neff examined Jackman on December 12, 2012, at [Firestone's] request, and stated "the degenerative changes noted in [Jackman's] cervical and lumbar spine are commonly related to simply the normal processes and progressions of life." [Firestone's] vocational report, issued April 3, 2013, indicates several viable employment opportunities exist for Jackman's skill and ability. Jackman's vocational report, issued April 17, 2013, stated Jackman is "precluded 100% from a gainful, competitive labor market" due to his injury.

(Sixth alteration in original) (Citations omitted). The deputy commissioner awarded Jackman permanent total disability benefits on August 30, 2013, which was affirmed by the commissioner on February 5, 2014. In September 2014, the matter was remanded by the district court for specification of when Jackman reached maximum medical improvement as part of the commissioner's finding of permanent total disability. In June 2015, the commissioner found Jackman's maximum medical improvement date was October 13, 2011. In November 2015, the district court affirmed the commissioner's award. Firestone appeals.

## II. Standard and Scope of Review

The issue of industrial disability is a mixed question of law and fact. *See Neal v. Annett Holdings, Inc.*, 814 N.W.2d 512, 525 (Iowa 2012). We review the commissioner's findings of fact for substantial evidence. *Id.* "Because the challenge to the agency's industrial disability determination challenges the agency's application of law to facts, we will not disrupt the agency's decision unless it is 'irrational, illogical, or wholly unjustifiable.'" *Id.* at 526 (citation omitted).

## III. Analysis

On appeal, Firestone disputes the commissioner's award of permanent total disability, claiming Jackman remains employable. The deputy commissioner—whose opinion was adopted in full by the commissioner—disagreed, finding:

> Mr. Jackman is an aging worker with very limited educational background or skills. He now has a 15-pound work restriction that will preclude him from returning to work in his prior employment. He testified that he will not be able to sit or take the bouncing of a forklift, and that testimony is accepted as reasonable. Mr. Jackman is realistically precluded from returning to any of the employment positions he has previously held.
>     At his age [of sixty-two], it is unrealistic to expect or believe that he could realistically retrain and obtain useful new skills. Moreover, his poor academic skills also suggest this is an unrealistic expectation. Firestone placed claimant on medical lay off because it had "no job position he can perform with his medical restrictions." If a large production facility like Firestone cannot find employment consistent with the medical restrictions of a 23-year employee, it is highly unlikely that any other employer is going to be willing to make accommodations to meet Mr. Jackman's medical restrictions. This is even less likely considering Mr. Jackman's age.

(Citation omitted.) Firestone argues the weight of the medical opinion indicates Jackman is employable. However, these medical opinions on the extent of

Jackman's physical impairments are only a factor to consider in determining industrial disability. *See Second Injury Fund of Iowa v. Shank*, 516 N.W.2d 808, 813 (Iowa 1994) ("Industrial disability goes beyond body impairment and measures the extent to which the injury impairs the employee's earning capacity."); *see also West Side Transport, Inc. v. Fishel*, No. 07-1015, 2008 WL 238597, at *5 (Iowa Ct. App. Jan. 30, 2008) ("[E]ven if a medical opinion is uncontroverted, it 'is not binding on the trier of fact' and 'may be accepted in whole, in part, or not at all.' Also, bodily impairment is merely one factor to consider in determining industrial disability." (citation omitted)). While one factor is Jackman's "functional disability," other factors include his "age, education, qualifications, experience, and inability to engage in similar employment." *Neal*, 814 N.W.2d at 526 (citation omitted). These factors were explicitly considered in the deputy commissioner's decision.

The medical opinions established Jackman had permanent work restrictions, including the inability to lift over fifteen pounds. As a result of Jackman's limitations, Firestone found there was no work available for him. Further, although one vocational expert report stated jobs were available for Jackman, another found no job position was available. The deputy commissioner found the latter opinion more credible, reasoning:

> In reaching this finding, I recognize that [Firestone] produced a vocational report. In that report, [Firestone's] vocational expert identified several potential job leads for [Jackman]. In reviewing those job leads, some likely require computer skills not possessed by [Jackman]. Others appear to require manual labor, such as unloading dirty garments off trucks. This seems like an unlikely expectation of someone with a 15-pound lifting restriction. Yet other positions appear to require customer service skills that have never been developed or used by [Jackman]. It seems unlikely that

a 62-year-old worker is going to be hired for a customer service position with no prior experience in customer service work. In general, I find the report and predictions offered by [Firestone's] vocational experts to be less than concrete or specific and likely overly optimistic about Mr. Jackman's realistic opportunities.

Instead, the deputy commissioner found Jackman's vocational expert more convincing, who opined that Jackman's restrictions, including his "restriction of no sitting or standing for longer than two hours," "place[d] him more within a sedentary physical capacity level." The deputy commissioner stated:

> [Jackman's] vocational expert [] noted, "all of Mr. Jackman's prior employment activities as described involved heavy to very heavy physical capacity and strength per the Department of Labor's definition. None of which he could perform now." I concur with this statement.
> After reviewing [Jackman's] vocational and educational histories, his medical restrictions, his age, and other relevant employments factors, [Jackman's]  vocational expert opine[d], "Mr. Jackman's loss of access to the general labor market primarily based upon his restrictions and other included factors has now been precluded 100% from a gainful, competitive labor market." This opinion is found to be convincing in this record.

(Citations omitted.) We defer to this credibility finding. *See Schutjer v. Algona Manor Care Ctr.*, 780 N.W.2d 549, 558 (Iowa 2010) ("[W]e give due regard to the commissioner's discretion to accept or reject testimony based on his assessment of witness credibility.").

Finally, Firestone notes Jackman has failed to seek alternative employment. This was considered by the deputy commissioner, who found this fact "[t]he most troubling aspect of this claim." The deputy commissioner determined:

> Generally, an employee should exhibit motivation to find alternate employment and should conduct a reasonable and legitimate job search before claiming to be permanently and totally disabled.

Mr. Jackman clearly has not exhibited the motivation to conduct a legitimate job search.

In this instance, however, Mr. Jackman has limited educational background and abilities. He has very limited employment skills and training. He is not capable of returning to his prior employment positions and is of an age in which it is unrealistic to expect him to retrain or to expect prospective employers to be willing to hire him to perform in a different form and arena than he has previously performed. Therefore, having considered all of the relevant industrial disability factors, I found that [Jackman] proved he is permanently and totally disabled in spite of his failure to conduct a reasonable and legitimate job search.

The commissioner—adopting the thorough decision of the deputy commissioner—found that a review of all of the factors, in conjunction with Jackman's bodily impairments, supported a finding of permanent total disability. We determine the commissioner's findings of fact are supported by substantial evidence and the conclusion of permanent total disability is not irrational, illogical, or wholly unjustifiable. We therefore affirm the district court decision, which affirmed the commissioner's ruling.

**AFFIRMED.**