# IN THE COURT OF APPEALS OF IOWA

No. 21-1550
Filed November 17, 2022


**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**DAVON ANTWON WRIGHT,**
    Defendant-Appellant.
_____

    Appeal from the Iowa District Court for Scott County, Mark R. Lawson,
Judge.


    The defendant appeals his sentence, alleging failure to give credit for
extended time served—pursuant to supreme court COVID-19 pandemic
supervisory orders—amounts to cruel and unusual punishment. **AFFIRMED.**


    Joel E. Fenton of Law Offices of Joel E. Fenton, PLC, West Des Moines,
for appellant.

    Thomas J. Miller, Attorney General, and Sharon K. Hall (until withdrawal)
and Nicholas E. Seifert, Assistant Attorneys General, for appellee.


    Considered by Vaitheswaran, P.J., Schumacher, J., and Blane, S.J.*

    *Senior judge assigned by order pursuant to Iowa Code section 602.9206
(2022).

**BLANE, Senior Judge.**

Davon Antwon Wright appeals his sentence following conviction for escape from custody as a habitual offender, a class "D" felony. The district court, applying Iowa Code section 903A.5(1) (2021), found he was not entitled to receive credit for time served. Wright asserts the supreme court COVID-19 supervisory order extending the speedy trial deadline resulted in him being detained an additional 236 days and this constitutes cruel and unusual punishment. He argues his sentence is inconsistent with the legislative intent of section 903A.5(1) because the legislature did not contemplate significant extensions of the speedy trial deadline that occurred during the pandemic. He further argues applying the statute as written, alongside the speedy trial extension, constituted a grossly disproportionate sentence. We affirm.

## I. Facts and Prior Proceedings

In May 2020, Wright was on parole for a 2016 conviction for eluding as a habitual offender. That month, he absconded from work release and wasn't back in custody until August 29.[1] The State charged him by trial information, on November 23, with escape from custody as a habitual offender. At his arraignment, Wright demanded speedy trial. That normally ninety-day deadline would have run on February 21, 2021. But on November 10, 2020, the supreme court entered a COVID-19 pandemic supervisory order that extended the speedy trial deadline to 120 days for defendants in custody with trial informations filed before February 1, 2021, and restarted the speedy trial clock on that date. *See In*

---

[1] Wright was arrested for eluding on August 29. He was not returned to custody of the department of corrections until November 17.

*the Matter of Ongoing Provisions for Coronavirus/COVID-19 Impact on Court Services* ¶ 3 (Nov. 10, 2020). This extended Wright's speedy trial deadline to June 21, 2021.

In the interim, Wright's trial was continued several times. In May, one week before his scheduled trial date, he was appointed new counsel. Counsel moved to continue so that he could get up to speed.[2] So on May 19, the district court entered orders finding good cause both to continue the trial and to bypass Wright's speedy trial deadline[3] until July 12.

The next month, Wright filed a written guilty plea. He was sentenced on October 15 to an indeterminate term of five years. But before the sentencing hearing, Wright moved to ensure he received credit for the time he served awaiting trial. Wright asserted the supervisory order extending the speedy trial deadline resulted in him being detained an additional 236 days—the days between the running of his initial speedy trial deadline and his sentencing date. He argued denying him credit for the time served was cruel and unusual punishment. Applying Iowa Code section 903A.5(1), the court determined that because Wright committed this offense while he was in custody on another offense, he was not eligible to get credit for time served. This included any additional time attributable to the supreme court's supervisory order extending the speedy trial deadline. And

---

[2] Trial counsel reported receiving appointments in six new cases, taking over from a prior attorney who evidently had little contact with those clients and ultimately withdrew.

[3] The court order cites June 1 as the speedy trial deadline. But, as the State points out, 120 days from February 1 is June 21.

finally, the court found this did not amount to cruel and unusual punishment. Wright appeals.

## II. Scope and Standard of Review

Wright raises a constitutional claim, which we review de novo. *See State v. Oliver*, 812 N.W.2d 636, 639 (Iowa 2012). A defendant can raise a claim that their sentence is illegal, whether on constitutional or statutory grounds, at any time.[4] *Id.* We review questions of statutory interpretation for errors at law. *Brooks v. State*, 975 N.W.2d 444, 445 (Iowa Ct. App. 2022).

## III. Analysis

Central to the issue on appeal is Iowa Code section 903A.5(1), which provides that at sentencing a confined inmate "shall be given credit for the days already served upon the term of the sentence." But "if a person commits any offense while confined in a county jail, municipal holding facility, or other correctional or mental health facility, the person shall not be granted credit for that offense." Iowa Code § 903A.5(1).

Wright recognizes that the court had no discretion under the mandatory language of the statute to grant him time-served credit.[5] He instead argues his

---

[4] Iowa Code section 814.6 requires a defendant who appeals following a guilty plea, excepting pleas to class "A" felonies, to establish good cause to appeal. "[G]ood cause exists to appeal from a conviction following a guilty plea when the defendant challenges his or her sentence rather than the guilty plea." *State v. Damme*, 944 N.W.2d 98, 105 (Iowa 2020).

[5] Wright also seems to acknowledge that section 901.8 requires that "If a person is sentenced for escape under section 719.4 or a crime committed while confined in a detention facility or penal institution," the sentence must run consecutive to any existing sentence. The court ordered Wright's sentence to be run consecutively, and Wright does not challenge that determination on appeal. Section 903A.5 is then consistent with section 901.8 in not allowing credit for time

sentence is inconsistent with the legislative intent of section 903A.5(1) because the legislature did not contemplate significant extensions of the speedy trial deadline like those that occurred during the pandemic. He further argues applying the statute as written, alongside the speedy trial extension, constituted an "as applied" constitutional violation of cruel and unusual punishment.

Dealing with the first claim, Wright agrees "the legislative intent in promulgating the statute was to apply a special categorization for individuals committing criminal offenses while in the custody of the Iowa Department of Corrections." And he admits the court applied the language of the statute as written. *See Neal v. Annett Holdings, Inc.*, 814 N.W.2d 512, 519 (Iowa 2012) ("When interpreting a statute, we will not look beyond the express terms of the statute if the text of the statute is plain and its meaning clear."). And it is true enough that trial restrictions imposed by the supreme court supervisory orders have affected the length of time defendants have been detained before being brought to trial. But the supreme court ordered the speedy trial extension in November 2020, and the legislature did not adjust the language of the statute in response during its 2021 legislative session. "[W]hen the legislature amends a statute, a presumption exists that the legislature intended to change the law." *Chavez v. MS Tech. LLC*, 972 N.W.2d 662, 670 (Iowa 2022) (citation omitted). The inverse inference is that when the legislature does not amend a statute, it does not intend to change the law. So we cannot say that the length of the pretrial

---

served on the escape sentence since it is served consecutively to the sentence Wright was serving.

detention was outside the legislature's contemplation, nor can we infer an intent other than the one expressed in the unchanged language.

That conclusion does not foreclose Wright's second argument, that his particular sentence was unconstitutionally prolonged because of the interaction between the supervisory order and the statute as applied to him.[6]  To begin, our supreme court no longer uses the terms "facial" or "as applied" in its cruel and unusual punishment analysis.  *See Oliver*, 812 N.W.2d at 639–40.  "Instead, the defendant must challenge his sentence under the categorical approach or make a gross proportionality challenge to the particular defendant's sentence."  *Sandoval v. State*, 975 N.W.2d 434, 438 (Iowa 2022) (cleaned up).  We apply a three-step test to determine whether Wright's sentence was grossly disproportionate.  *Oliver*, 812 N.W.2d at 647.  "The first step in this analysis, sometimes referred to as the threshold test, requires a reviewing court to determine whether a defendant's sentence leads to an inference of gross disproportionality."  *Id.*  "This preliminary test involves a balancing of the gravity of the crime against the severity of the sentence."  *Id.* (citation omitted).  "If, and only if, the threshold test is satisfied, a court then proceeds to steps two and three," which involve intra- and interjurisdictional analysis.  *Id.*

Balancing the relevant factors, we agree with the district court that the sentence was not grossly disproportionate.  Wright absconded from custody while on work release and was not found for months afterward.  He was given a measure

---

[6] In his brief, Wright refers to the "federal categorical" approach to cruel and unusual punishment analysis.  But the greater portion of his brief discusses his "as-applied" challenge and gross disproportionality argument.  In any case, we find a categorical challenge too underdeveloped to address.

of trust and violated it. This is precisely the kind of offense for which the legislature determined not only would the sentence be served consecutively, but also no amount of credit should be given for time served since he was receiving credit on the previous sentence. In addition, he was on parole following a conviction for eluding. Wright also has an extensive criminal history. Escape from custody is a class "D" felony, and Wright received the maximum of five years. He asserts he spent an additional 236 days in jail before being sentenced (a total confinement of 326 days minus 90 days for the conventional speedy trial timeline), although the State disputes that number. True, this is substantial as a proportion of his five-year sentence. The State argues "the non-application of credit for time served is not a disproportionate punishment so much as it is the denial of a benefit that other offenders may qualify for." But the reality is Wright will spend more time in prison than he would otherwise. Still, we cannot say the sentence is grossly disproportionate to the gravity of the crime. A successful disproportionality challenge is exceedingly rare. *See Bruegger*, 773 N.W.2d at 873. And "[t]he Eighth Amendment does not require strict proportionality between crime and sentence." *Ewing v. California*, 538 U.S. 11, 23 (2003) (citation omitted). Only extreme variances will be forbidden. *Id.* We do not think this is one of those rare cases.

In addition, the State disputes the number of days calculated, asserting not all of them can be attributed solely to the supervisory order. The State points out that it offered Wright a plea deal in January 2021 but he did not submit his plea until July. Some of this, it appears, is due to the lack of communication with his prior counsel. But the State also points to several defense continuances after

appointment of new counsel. The court rightfully noted it would not "hold it against" Wright that he entered his plea so late or that his counsel needed time to prepare for trial. But Wright was arrested and brought back into custody after the supervisory order went into effect. And, given that he was arrested for escaping from custody, Wright should have known he could not by statute receive credit for his pretrial detention when the sentence was imposed. At bottom, the fact that he was not sentenced until October when speedy trial ran in June is not solely attributable to the supervisory order.

## IV. Conclusion

We find no error in the district court's conclusion it had no discretion in applying section 903A.5 to deny Wright credit. We further find the resulting sentence was not grossly disproportionate to the offense and consequently did not constitute cruel and unusual punishment.

**AFFIRMED.**