**IN THE COURT OF APPEALS OF IOWA**

No. 22-2023
Filed September 27, 2023

**PRAIRIE VIEW MANAGEMENT, INC., and ACCIDENT FUND GENERAL INSURANCE COMPANY,**
　　Petitioners-Appellees,

**vs.**

**ROSE MORAN,**
　　Respondent-Appellant.
_____

　　Appeal from the Iowa District Court for Polk County, Celene Gogerty, Judge.

　　An injured former employee appeals from judicial review of her workers' compensation claim. **AFFIRMED.**

　　Gary B. Nelson of Rush & Nicholson, P.L.C., Cedar Rapids, for appellant.

　　Laura Ostrander of Accident Fund Holdings, Inc. d/b/a AF Group, Lansing, Michigan, for appellee.

　　Considered by Schumacher, P.J., and Chicchelly and Buller, JJ.

**BULLER, Judge.**

Rose Moran appeals from the district court's judicial-review ruling reversing the Workers' Compensation Commissioner's award of temporary and penalty benefits. We affirm the district court, finding that Moran's employer, Prairie View Management, Inc. (Prairie View), offered her suitable work through the effective date of her voluntary quit and she is not entitled to penalty benefits.

## I. Background Facts and Proceedings

Moran started working for Prairie View as a community service assistant in September 2019. A few months later, on December 5, Moran emailed Prairie View's human resources specialist with her resignation. She cited stress, complaints about coworkers, and paperwork as her reasons for resigning, and she gave an effective end date of December 20. The human resources specialist asked Moran to submit a letter of resignation to her direct supervisor. On December 9, Moran slipped on a patch of ice while working for Prairie View, injuring her right wrist and the side of her body. She submitted a formal letter of resignation as instructed one day later, but she dated her submission December 5 and gave the same December 20 end date.

After Moran reported the injury to Prairie View, the company modified her duties to light work according to her restrictions. These modifications were effective through her last scheduled day of work on December 20. Moran never made any written communication to Prairie View seeking to withdraw or rescind her resignation, but she testified she verbally made a request on an unknown date.

Moran filed a petition for workers' compensation benefits against Prairie View. The deputy commissioner found that Moran was entitled to penalty and

temporary total benefits after December 20, 2019 (past her end date), based on her attempt to rescind her resignation. The commissioner affirmed the deputy commissioner's decision in its entirety on intra-agency appeal.

Prairie View sought judicial review. As relevant to this appeal, the company disputed the commissioner's ruling on temporary and penalty benefits. The district court reversed the commissioner's grant of penalty and temporary total benefits past Moran's end date, while affirming on all other grounds. Moran appeals.

## II.    Standard of Review

This appeal comes before us under Iowa Code chapter 17A, the Iowa Administrative Procedure Act. *See* Iowa Code § 86.26 (2019) ("Judicial review of decisions or orders of the workers' compensation commissioner may be sought in accordance with chapter 17A."). Under this chapter, we may only interfere with an agency decision if it is erroneous under one of the enumerated grounds and a party's substantial rights have been prejudiced. *Id.* § 17A.19(10). For example, we must reverse if the agency's decision was "[b]ased on an erroneous interpretation of a provision of law whose interpretation has not clearly been vested by a provision of law in the discretion of the agency." *Id.* § 17A.19(10)(c).

To the extent our review turns on interpretation of the workers' compensation statute, interpretation has not been vested with the agency and we do not defer to its legal conclusions. *See id.* § 17A.19(10)(c), (11)(b); *Ramirez-Trujillo v. Quality Egg, L.L.C.*, 878 N.W.2d 759, 769 (Iowa 2016) ("The legislature has not expressly vested the workers' compensation commissioner with the authority to interpret the workers' compensation statutes in chapter 85.").

On questions of fact, we look only for substantial evidence. *See* Iowa Code § 17A.19(10)(f); *Meyer v. IBP, Inc.*, 710 N.W.2d 213, 218 (Iowa 2006). "Substantial evidence" is "the quantity and quality of evidence that would be deemed sufficient by a neutral, detached, and reasonable person, to establish the fact at issue when the consequences resulting from the establishment of that fact are understood to be serious and of great importance." Iowa Code § 17A.19(10)(f)(1).

### III.    Discussion

Moran argues that she was entitled to penalty and temporary total benefits after her designated end date because she wanted to keep working and attempted to withdraw or rescind her resignation. Temporary benefits are governed by Iowa Code section 85.33. Under that section, an injured employee is disqualified "from receiving temporary partial, temporary total, and healing period benefits if the employer offers 'suitable work' that the employee refuses." *Neal v. Annett Holdings, Inc.*, 814 N.W.2d 512, 519 (Iowa 2012) (citations omitted); Iowa Code § 85.33(3)(a).

We find *Schutjer v. Algona Manor Care Center*, 780 N.W.2d 549 (Iowa 2010), dictates the outcome here. On the facts, the *Schutjer* court found an employee who announced "I'm leaving, I quit," after her work-related injury was not eligible for temporary benefits. 780 N.W.2d at 553, 558–59. On the law, the *Schutjer* court clarified that the relevant inquiry is (1) whether the employee was offered suitable work, and (2) whether the employee refused the suitable work. *Id.* at 559. The *Schutjer* court then held the second prong can be met through a

voluntary quit. *Id.* (finding a voluntary quit was a refusal to work "on that date and any future date").

We conclude, on the facts here and applying the law set forth in *Schutjer*, that Prairie View offered Moran suitable light work for the duration of her employment up to the effective date of her voluntary quit. *See id.* The district court correctly determined Moran was not owed temporary total benefits.

At first blush, Moran's attempt to rescind her resignation appears to be a thorny factual question. But the law is clear. As we have recognized in a published decision,

> An attempt to withdraw the resignation prior to [the effective] date is a request for reemployment. The employer may choose to return to *status quo* by rehiring the employee, or accepting a retraction of the notice. However, the employer is not required to accept the employee's request to withdraw her resignation.

*Langley v. Emp. Appeal Bd.*, 490 N.W.2d 300, 303 (Iowa Ct. App. 1992) (citations and quotation marks omitted). In other words, a resignation is a voluntary quit and an employee's unilateral attempt to rescind a resignation does not entitle that employee to benefits. *See id.* Applying the law to this case, Prairie View was entitled to, and did, decline to re-hire Moran or otherwise honor her attempted withdrawal or rescission of resignation. By offering suitable work to Moran between the date of injury and her self-selected last day of employment, Prairie View fulfilled its statutory obligations and thus did not owe temporary total benefits. *See* Iowa Code § 85.33(3)(a); *Schutjer*, 780 N.W.2d at 559.

The two legal authorities relied upon by the commissioner do not persuade us otherwise. The first case is an administrative decision in which a resignation based on retaliatory conduct did not disqualify the employee from receiving

benefits. *See Lange v. Crestview Acres*, File No. 5002953, 2005 WL 3730686, at *5 (Iowa Workers' Comp. Comm'n Dec. 27, 2005). Assuming without deciding there is value in considering this agency order predating *Schutjer*, it is distinguishable: there is no claim of retaliation here or in *Schutjer*. The other case, from our supreme court, involves an employer who did not offer suitable work to the employee, which is easily distinguishable from the facts here, as Prairie View offered Moran appropriate work through her last day of employment. *Neal*, 814 N.W.2d at 525. Because neither of the authorities relied on by the commissioner are on-point, we agree with the district court that the commissioner erred in its application of the law.

We note our holding—that an employee is not entitled to temporary total benefits after a voluntary quit—is consistent with the public policy underlying the statute. "The primary purpose of the workers' compensation statute is to benefit the worker and his or her dependents, insofar as statutory requirements permit." *McSpadden v. Big Ben Coal Co.*, 288 N.W.2d 181, 188 (Iowa 1980). Within the umbrella of benefits offered by the statute, "the various categories of workers' compensation benefits have distinct purposes." *Evenson v. Winnebago Indus., Inc.*, 881 N.W.2d 360, 373 (Iowa 2016).

"Permanent benefits and temporary benefits are very different." *Mannes v. Fleetguard, Inc.*, 770 N.W.2d 826, 830 (Iowa 2009). Permanent benefits are meant to "compensate either a disability to a scheduled member or a loss in earning capacity (industrial disability)." *Id.* And temporary benefits are meant to "compensate the employee for lost wages until he or she is able to return to work." *Id.* More specifically, the purpose of temporary total benefits is "to partially

reimburse the employee for the loss of earnings while the employee is recuperating from the condition the employee has suffered." *Clark v. Vicorp Rests., Inc.*, 696 N.W.2d 596, 604–05 (Iowa 2005) (citing Arthur C. Hedberg, Jr. & Phillip Vonderhaar, *An Overview of the Iowa Workers' Compensation Act*, 30 Drake L. Rev. 809, 825 (1981)). "Section 85.33 clearly defines the purpose of temporary partial benefits and subsection (4) sets forth a formula for calculating temporary partial benefits, based on actual reduction of income. Thus, as a matter of law, temporary partial benefits cannot be awarded where there has been no reduction in income." *Mannes*, 770 N.W.2d at 831. There is no reduction in income past the effective date of a voluntary quit because, for an employee to be awarded temporary benefits, the claimant needs to offer "direct evidence of wage loss." *Id.* at 830. When an employee would no longer receive wages past the effective date of a voluntary quit, there is no loss of wages causally linked to the injury. *Cf. Villela v. Lund Food Holdings, Inc.*, No. 06-0367, 2007 WL 1827467, at *3 (Iowa Ct. App. June 27, 2007) (noting that, for purposes of temporary partial benefits, the reduction in earning ability must be a result of the injury and not a result of another reason).

Finally, because we conclude Moran is not owed temporary total benefits, we also agree with the district court that the commissioner erred in ordering penalty benefits. *See Gilbert v. USF Holland, Inc.*, 637 N.W.2d 194, 199 (Iowa 2001) ("[W]hen an employee's claim for benefits is fairly debatable based on a good faith dispute over the employee's factual or legal entitlement to benefits, an award of penalty benefits is not appropriate under the statute."). We affirm on that issue as well.

**IV.  Disposition**

Applying precedent and considering the workers' compensation act's purpose, we reject Moran's arguments on appeal and affirm the district court.

**AFFIRMED.**