# IN THE SUPREME COURT OF IOWA

No. 12–1280

Filed May 17, 2013


**IOWA DENTAL ASSOCIATION,**

Appellant,

vs.

**IOWA INSURANCE DIVISION** and **IOWA INSURANCE COMMISSIONER,**

Appellees,

and

**FEDERATION OF IOWA INSURERS,**

Intervenor–Appellee.

---

Appeal from the Iowa District Court for Polk County, Mary Pat Gunderson, Judge.


A trade association representing Iowa dentists appeals the district court's ruling upholding a declaratory order of the Iowa Insurance Commissioner. **REVERSED AND REMANDED.**


Rebecca A. Brommel of Brown, Winick, Graves, Gross, Baskerville and Schoenebaum, P.L.C., Des Moines, for appellant.


Thomas J. Miller, Attorney General, and Jeanie Kunkle Vaudt, Assistant Attorney General, for appellees.

Scott A. Sundstrom of Nyemaster Goode, P.C., Des Moines, for intervenor–appellee.

**MANSFIELD, Justice**.

This case asks us to decide whether to uphold the Iowa Insurance Commissioner's interpretation of a recently enacted law governing dental insurance plans. *See* Iowa Code § 514C.3B (2011). Under the Commissioner's interpretation of that law, an insurer may limit the maximum fees charged by dentists for services that are generally included in the insurer's dental plan, even though they are not actually reimbursed by the insurer because of a plan restriction.

On our review, we find that interpretation of the term at issue has not been clearly vested by a provision of law in the discretion of the Commissioner. Therefore, de novo review is appropriate. *See id.* § 17A.19(10)(*c*). We then conclude that the services in question do not meet the statutory definition of "covered services," because they have not been "reimbursed under the dental plan." *See id.* § 514C.3B(3)(*a*). Accordingly, the fee for them may not be "set by the dental plan." *See id.* § 514C.3B(1). For these reasons, we reverse the decision of the district court upholding the Commissioner's declaratory ruling and remand for further proceedings consistent herewith.

## I. Facts and Procedural Background.

This case centers on the contractual relationships between dentists and insurers that provide dental plans. Many dentists in Iowa enter into these plans, under which insurers reimburse all or part of the costs of various dental procedures. Typically the plan contracts include maximum fee schedules. In the schedule, the insurer sets a maximum amount the dentist can charge for a particular service. Dentists agree to abide by these maximum fees, in exchange for the benefit of providing services to insured patients.

Generally, the plans exclude certain services, such as cosmetic dentistry and teeth whitening. Preventive plans have additional exclusions. But even when services are covered, there may be limits such as deductibles, maximum annual benefits, waiting periods, and frequency limitations. A common frequency limitation is that patients may be reimbursed for up to two teeth cleanings per year, but not for a third cleaning within that same time period.

Before the general assembly passed section 514C.3B, some dental plans contained maximum fees that dentists could charge for services that were never reimbursable under their dental insurance plans, like teeth whitening. In 2010, and in apparent response to this practice, the legislature adopted "An Act prohibiting the imposition by a dental plan of fee schedules for the provision of dental services that are not covered by the plan." 2010 Iowa Acts ch. 1179 (codified at Iowa Code § 514C.3B).

Iowa's law provides:

> A contract between a dental plan and a dentist for the provision of services to covered individuals under the plan shall not require that a dentist provide services to those covered individuals at a fee set by the dental plan unless such services are covered services under the dental plan.

Iowa Code § 514C.3B(1). The statute contains the following definition of "covered services":

> "*Covered services*" means services reimbursed under the dental plan.

*Id.* § 514C.3B(3)(*b*). And a final subsection of the statute states:

> Nothing in this section shall be construed as limiting the ability of an insurer or a third-party administrator to restrict any of the following as they relate to covered services:
>
> > *a.* Balance billing.
> >
> > *b.* Waiting periods.

> *c.* Frequency limitations.
>
> *d.* Deductibles.
>
> *e.* Maximum annual benefits.

*Id.* § 514C.3B(4).

Following enactment of this law, insurers continued imposing maximum fees on services that were actually reimbursed under their dental plans, such as semiannual teeth cleanings. But some insurers went further. They placed maximum fees on services that were *potentially reimbursable* but were *not actually reimbursed* because of some plan limit, such as a frequency limit. For example, an insurer would require a dentist to charge no more than a certain amount for any teeth cleaning, even though only the first two cleanings were actually reimbursed under the plan.

According to the Iowa Dental Association (IDA), the petitioner in this action, a number of its dentist–members inquired to insurers about maximum fees on these reimbursable, but not actually reimbursed, services. The insurers responded that such services were "covered services" under section 514C.3B(3)(*a*), and could accordingly be subject to their fee schedules, even though they were not being reimbursed in a particular instance.

The IDA argued that dentists faced "conflicting interpretations" of the statute: the dentists' own interpretation that such services were not "covered," and the insurers' view that they were. Accordingly, on August 19, 2011, the IDA filed with the Insurance Division a request for a declaratory order clarifying the meaning of "covered services" in section 514C.3B. *See id.* § 17A.9 (setting forth the procedure for seeking a declaratory order from an agency). The IDA specifically requested an answer to the following question:

Is an insurer permitted to impose and enforce a maximum fee for services that are not reimbursed under the dental plan (except for standard co-payments or deductibles paid by the patient) due to limitations related to balance billing, waiting periods, frequency limitations, deductibles, and maximum annual benefits?

The IDA proposed that the Commissioner answer the question in the negative, based on its reading of the statute's definition of "covered services."

The Federation of Iowa Insurers—which represents dental plan providers Wellmark Blue Cross and Blue Shield of Iowa, Delta Dental of Iowa, and the Principal Financial Group—petitioned to intervene in the matter. After its petition was granted, the Federation submitted briefs urging the Commissioner to answer the IDA's question in the affirmative.

On November 8, the Insurance Commissioner issued a declaratory order that agreed with the Federation's position: "covered services" include services that can be reimbursed generally, but that are not actually reimbursed in a particular circumstance due to a policy restriction. The Commissioner reasoned that this reading gave meaning to section 514C.3B(4) and also better served customers because it allowed insurers to keep prices down. As the Commissioner explained,

> Subsection 3 must be read in conjunction with subsection 4, to give meaning to the entire statute, which places several limitations on covered services related to balance billing, waiting periods, frequency limitations, deductibles, and maximum annual benefits. Subsection 4 indicates that the "covered service" does not lose its status as a covered service because of limitations placed on reimbursement to the dentist. Thus, the statute does not require . . . a service to actually be reimbursed under the dental plan. Stated another way, non-covered benefits are dental procedures that a dental plan does not cover and never pays for.
>
> This determination fits well within the context of the consumer's dental insurance contract.
>
> . . . .

> Patients benefit when there [i]s certainty in the amount that will be paid for a given service. They lack the expertise to discuss and/or negotiate dental fees with the dentists that do not fall within the definition of covered services. A patient could end up paying significantly more than the negotiated fee between the insurer and dentist without the benefit of the insurer's contract with the dentist.

On December 11, the IDA filed a petition in Polk County District Court requesting judicial review of the Commissioner's order. The IDA's petition advanced several alternative arguments: (1) the Commissioner lacked clearly vested interpretive authority over the statutory term "covered services" and her ruling was erroneous; (2) the Commissioner, even if clearly vested with authority, issued an illogical, irrational, and unjustifiable order; (3) the Commissioner failed to consider a relevant matter—namely the meaning of the term "reimbursed"; and (4) the Commissioner's action was otherwise unreasonable, arbitrary, capricious, or an abuse of discretion.

The Federation filed a brief in opposition. It argued the district court should uphold the ruling because the Commissioner was clearly vested with interpretive authority and the ruling was neither illogical, irrational, nor unjustifiable. The Federation also asserted that the Commissioner's ruling was correct even if the court employed a less deferential standard of review. Finally, the Federation highlighted policy concerns and insisted that the IDA's interpretation was anti-consumer because it would allow dentists to charge insured customers higher fees on policy-limited services, such as a third teeth cleaning.

The district court affirmed the Commissioner's declaratory ruling. The court relied on Iowa Code chapter 505 to conclude that the Insurance Commissioner had been clearly vested with interpretive authority. Section 505.8(2), in particular, provides:

> The commissioner shall, subject to chapter 17A, establish, publish, and enforce rules not inconsistent with law for the enforcement of this subtitle and for the enforcement of the laws, the administration and supervision of which are imposed on the division, including rules to establish fees sufficient to administer the laws, where appropriate fees are not otherwise provided for in rule or statute.

*Id.* § 505.8(2). The court next read section 514C.3B(3) in conjunction with section 514C.3B(4) to conclude that the Commissioner's interpretation of "covered services" was not irrational, illogical, or wholly unjustifiable.

The IDA now appeals and the parties make essentially the same arguments before us. At issue here is whether to affirm the Commissioner's declaratory order that dental services ordinarily reimbursable, but not actually reimbursed due to some plan policy limit, are "covered services" under section 514C.3B.

## II. Scope of Review.

This is an appeal of a district court's review of agency action; Iowa Code section 17A.19 determines the standard of review to apply. *See id.* § 17A.19(10). Section 17A.19(10) states, in relevant part:

> 10. The court may affirm the agency action or remand to the agency for further proceedings. The court shall reverse, modify, or grant other appropriate relief from agency action, equitable or legal and including declaratory relief, if it determines that substantial rights of the person seeking judicial relief have been prejudiced because the agency action is any of the following:
>
> . . . .
>
> *c.* Based upon an erroneous interpretation of a provision of law whose interpretation has not clearly been vested by a provision of law in the discretion of the agency.
>
> . . . .
>
> *l.* Based upon an irrational, illogical, or wholly unjustifiable interpretation of a provision of law whose

interpretation has clearly been vested by a provision of law in the discretion of the agency.

. . . .

*n.* Otherwise unreasonable, arbitrary, capricious, or an abuse of discretion.

*Id.*

We accordingly review an agency's interpretation of a provision of law under either the highly deferential "irrational, illogical, or wholly unjustifiable" standard, or the nondeferential errors-at-law standard. We give deference to an agency only if our legislature clearly vested authority to interpret the provision with the agency. Iowa Code § 17A.10(*l*). Otherwise, we review for erroneous interpretations of law. *Id.* § 17A.10(*c*).

Although the district court's thorough decision appears to focus largely on whether the Commissioner has been clearly vested with authority to interpret the 2010 *legislation*, i.e., section 514C.3B, we have clarified the nature of the relevant inquiry in recent years. In *Renda v. Iowa Civil Rights Commission*, we had to decide whether the Iowa Civil Rights Commission (ICRC) had jurisdiction over an inmate's civil rights claim alleging discrimination in employment and housing. 784 N.W.2d 8, 9 (Iowa 2010). At issue was whether the inmate was an "employee" and whether the correctional facility was a "dwelling" within the meaning of the Iowa Civil Rights Act. *Id.* at 9. We explained:

> We begin by noting that despite the parties' articulation of the issue as whether the ICRC has the authority to interpret the Act, we do not view the issue so broadly. The focus of our inquiry is not whether the ICRC has the authority to interpret the entire Act. Rather, we must determine whether the interpretation of the specific terms "employee" and "dwelling" has been clearly vested in the discretion of the commission.

*Id.* at 10.

We then reviewed our precedents and found they confirmed this approach. *Id.* at 11–13. In prior cases, despite grants of rulemaking authority to the agencies in question, we had not found that the agencies had been vested with the authority to interpret terms such as competent evidence, hardship, public interest, willful, and confidential. *Id.* at 13. We did note that an express legislative grant of authority to *interpret* the statute could resolve the issue. *Id.* at 11. But a grant of rulemaking authority alone was generally not sufficient. *Id.* at 13.

We further noted that when a statutory provision "is a substantive term within the special expertise of the agency, we have concluded that the agency has been vested with the authority to interpret the provisions." *Id.* at 14. But when the term is found in other statutes or has "an independent legal definition that is not uniquely within the subject matter expertise of the agency, we generally [have] conclude[d] the agency has not been vested with interpretive authority." *Id.*

Applying these principles, we held in *Renda* that the ICRC was not clearly vested with authority to interpret "employee" and "dwelling." *Id.* There was no express grant of interpretive authority in the underlying legislation, and "[b]oth terms have specialized legal meaning and are widely used in areas of law other than the civil rights arena." *Id.*

A year after *Renda*, we had to decide whether a paint company was exempt from use tax on purchases of machines it used in its Iowa retail outlets to mix base paint with colorant. *See Sherwin-Williams Co. v. Iowa Dep't of Revenue*, 789 N.W.2d 417, 419 (Iowa 2010). The issue was whether a retail establishment could be considered a "manufacturer" within the meaning of Iowa's use tax law. *Id.* at 423. "Manufacturer" was defined in the statute. *See id.* at 420 (citing Iowa Code § 428.20).

We ultimately concluded that interpretive authority had not been vested in the department of revenue for the following reasons:

> The insurmountable obstacle to finding the department has authority to interpret the word "manufacturer" in this context is the fact that this word has already been interpreted, i.e., explained, by the legislature through its enactment of a statutory definition. *See id.* §§ 422.45(27)(*d*)(4), 428.20. Under these circumstances, we do not think the legislature intended that the department have discretion to interpret—give meaning to—this term.

*Id.* at 423–24.

On the other hand, in *Evercom Systems, Inc. v. Iowa Utilities Board,* we found the utilities board had been vested with authority to interpret the term "unauthorized change in service." 805 N.W.2d 758, 762–63 (Iowa 2011). The underlying legislation required the Board to "adopt rules prohibiting an unauthorized change in telecommunication service"; we did not consider that "an explicit grant of the authority to interpret the term." *Id.* at 762. However, in light of our precedent and the fact that "unauthorized change in service" was a "substantive term within the special expertise of the agency," we held that authority had been vested with the board and a deferential standard of review should apply. *Id.* at 762–63.

In *Neal v. Annett Holdings, Inc.*, we had to address the meaning of the phrase "suitable work" in a workers' compensation case. 814 N.W.2d 512, 516 (Iowa 2012). Although the commissioner had been expressly granted statutory authority to "[a]dopt and enforce rules necessary to implement" the workers' compensation laws, we reiterated that "the mere grant of rulemaking authority does not give an agency authority to interpret all statutory language." *Id.* at 519 (citation and internal quotation marks omitted). We noted that the concept of "suitable work" is found in other legal contexts and "has a specialized legal meaning

extending beyond the context presented in this case." *Id.* Accordingly, we did not give deference to the commissioner's interpretation of the phrase. *Id.*

In *Burton v. Hilltop Care Center*, we held that the legislature, which had provided an independent statutory definition of "gross earnings," did not clearly vest interpretive authority for that term in the workers' compensation commissioner. 813 N.W.2d 250, 261–62 (Iowa 2012). Instead we applied a de novo standard of review and focused on whether inadvertent overpayments met the legislative definition of "gross earnings"—"payments by employer to the employee *for employment.*" *Id.* at 261 (citation and internal quotation marks omitted). Ultimately we concluded, "Money received due to an accounting error would not be money that was earned for employment as the statute requires." *Id.* at 263.

Applying *Renda* and its progeny here, we find that interpretive authority concerning the phrase "covered services" has not been clearly vested with the Insurance Commissioner. As noted by the district court, the legislature has given the Commissioner the power to make rules "not inconsistent with law for the enforcement of this subtitle and for the enforcement of the laws, the administration and supervision of which are imposed on the division." Iowa Code § 505.8(2). However, granting the authority to make rules for enforcement purposes is not the same as granting authority to make interpretive rules. In the workers' compensation field, we have said that the commissioner's express statutory authority to "[a]dopt and enforce rules necessary to *implement* this chapter and chapters 85, 85A, 85B, and 87," *id.* § 86.8 (emphasis added), does not by itself amount to a vesting of interpretive authority.

*See Waldinger Corp. v. Mettler*, 817 N.W.2d 1, 5 (Iowa 2012); *see also Neal*, 814 N.W.2d at 519; *Burton*, 813 N.W.2d at 261.

Furthermore, as in *Sherwin-Williams* and *Burton*, the legislature has provided its own definition of the term at issue. This presents an "insurmountable obstacle" to a determination that the insurance commissioner has been vested with interpretive authority over "covered services." Instead, it indicates we ought to apply the legislative definition ourselves. *See Burton*, 813 N.W.2d at 261–62.

Additionally, when we turn to the legislative definition, we find that the relevant word—"reimbursed"—is not a "substantive term within the special expertise of the agency." *Evercom*, 805 N.W.2d at 762 (citation and internal quotation marks omitted). Rather, the word "reimbursed" appears hundreds of times within the Iowa Code. For all these reasons, we will review the Commissioner's interpretation of the statute for errors at law.

### III. Interpretation of Section 514C.3B.

We have to decide whether services that would be reimbursed but for a dental plan restriction constitute "covered services," i.e., "services reimbursed under the dental plan." Iowa Code § 514C.3B(3)(*a*). The Commissioner concluded that "the statute does not require that a service . . . actually be reimbursed under the dental plan." On our review of the matter, we reach a different conclusion.

The parties here essentially dispute the significance of the word "reimbursed," which has no definition in the statute. "Where the legislature has not defined words of the statute, we may refer to prior decisions of this court and others, similar statutes, dictionary definitions, and common usage." *Bernau v. Iowa Dep't of Transp.*, 580 N.W.2d 757, 761 (Iowa 1998). The IDA argues the definition includes only services

that are *actually* reimbursed under the plan, while the Federation and the Commissioner argue it includes services that are *generally* reimbursed or *reimbursable* under a plan, whether or not reimbursed in the specific instance.

When we examine the language of section 514C.3B(3)(*a*), it appears to favor the IDA's position. The word "reimbursed" usually means that the cost has been repaid. *See Merriam–Webster's Collegiate Dictionary* 983 (10th ed. 2002) ("reimburse . . . 1: to pay back to someone : REPAY <~travel expenses> 2: to make restoration or payment of an equivalent to <~him for his traveling expenses> . . . ."); *see also Black's Law Dictionary* 1399 (9th ed. 2009) ("reimbursement, *n.* 1. Repayment. 2. Indemnification."). When a patient has a third teeth cleaning within a year, and the dental insurer declines to pay for it, we would not normally say that the cleaning has been "reimbursed under the dental plan." Iowa Code § 514C.3B(3)(*a*).

This meaning of "covered services" finds implicit support in what other states have done. Iowa is not the only state to have enacted legislation that prevents dental insurers from imposing maximum fees on noncovered services. The first to do so was Rhode Island in 2009. *See* 2009 R.I. Pub. Laws chs. 09–41, 09–52. There the statute defined "covered services" as "services reimbursable under the applicable subscriber agreement, subject to such contractual limitations on subscriber benefits as may apply, including, for example, deductibles, waiting period or frequency limitations." *See* R.I. Gen. Laws Ann. § 23-17.13-6(a) (Supp. 2012).

During their respective 2010 legislative sessions, but *before* Iowa adopted what became section 514C.3B, Arizona, Idaho, Kansas, Mississippi, Oklahoma, South Dakota, Virginia, and Washington all

enacted laws that limited the imposition of maximum fees on noncovered dental services and defined "covered services." Six of these states (Kansas, Mississippi, Oklahoma, Rhode Island, South Dakota, and Washington) used the term "reimbursable."[1] The other three (Arizona, Idaho, and Virginia) expressed the same concept, although in different verbiage.[2] None of these nine states used the term "reimbursed." Thus,

[1]*See* Kan. Stat. Ann. § 40–2,186(a) (Supp. 2011) (" 'Covered service' means a service which is *reimbursable* under the health benefit plan subject to any deductible, coinsurance, waiting period, frequency limitation, annual or lifetime benefit maximum or other contractual limitation contained in the health benefit plan." (Emphasis added.)); Miss. Code Ann. § 83–51–31 (West Supp. 2012) ("For the purposes of this section, 'covered services' means services that are *reimbursable* under the applicable subscriber agreement, notwithstanding any deductibles, waiting periods or frequency limitations that may apply." (Emphasis added.)); Okla. Stat. Ann. tit. 36, § 7301 (West Supp. 2013) (" 'Covered services' means services *reimbursable* under the applicable subscriber agreement, subject to the contractual limitations on subscriber benefits as may apply, including, for example, deductibles, waiting period or frequency limitations . . . ." (Emphasis added.)); R.I. Gen. Laws Ann. § 23-17.13-6(a) (" 'Covered services,' as used herein, means services *reimbursable* under the applicable subscriber agreement, subject to such contractual limitations on subscriber benefits as may apply, including, for example, deductibles, waiting period or frequency limitations." (Emphasis added.)); S.D. Codified Laws § 58-17-146 (Supp. 2012) ("For the purposes of this section, the term, covered services, means services *reimbursable* under the plan, policy, or contract, subject to such contractual limitations on benefits as may apply, including deductibles, waiting periods, frequency limitations, or charges over the benefit maximum." (Emphasis added.)); Wash. Rev. Code Ann. § 48.21.147(2) (Supp. 2012) ("For the purposes of this section, 'covered services' means dental services that are *reimbursable* under the applicable insurance policy, group plan, or subscriber agreement or would be reimbursable but for the application of contractual limitations such as benefit maximums, deductibles, coinsurance, waiting periods or frequency limitations." (Emphasis added.)).

[2]Ariz. Rev. Stat. Ann. § 20-847 (West Supp. 2012) ("For the purposes of this section, 'covered service' means a service for which any reimbursement is available under a subscription contract without regard to contractual limitations by a deductible, copayment, coinsurance, waiting period, annual or lifetime maximum, frequency limitation, alternative benefit payment, exclusion or other limitation."); Idaho Code Ann. § 41-1849(1) (2010) (" 'Covered services' as used in this section means services under the applicable dental plan, dental plan contract or plan benefits subject to such contractual limitations on benefits of the dental plan, dental plan contracts or plan benefits as may apply."); Va. Code Ann. § 38.2–3407.17(A) (Supp. 2012) (" 'Covered services' means the health care services for which benefits under a policy, contract, or evidence of coverage are payable by a dental plan, including services paid by the insureds, subscribers, or enrollees because the annual or periodic payment maximum established by the dental plan has been met.").

our general assembly apparently had other templates available if it had wanted to clearly prohibit dental plans from imposing maximum fees on services that would have been reimbursed but for a plan limitation. Instead of using language that paralleled that of the other states, our legislature defined "covered services" to mean "services reimbursed under the dental plan."

Of course, we must construe section 514C.3B in its entirety. *See State v. Adams*, 810 N.W.2d 365, 369 (Iowa 2012). Also, legislative history should be taken into account in construing an ambiguous statute. *See* Iowa Code § 4.6(3). In this regard, the Federation and the Commissioner point out that section 514C.3B was amended to add subsection 4 during the legislative process.[3] As noted above, that subsection reads:

---

[3]The original legislation (HF 2229) passed the House without subsection 4 on February 24, 2010 on a vote of 93–1. *See* H. Journal, 83rd G.A., 2d Sess., at 711–12 (Iowa 2010) [hereinafter H. Journal]; H.F. 2229 (Introduced), 83rd G.A., 2d Sess. (Iowa 2010). On March 10, on the Senate floor, Senator McCoy offered an amendment (S-5185) to add the following version of subsection 4:

> Nothing in this section shall be construed as limiting the ability of an insurer or a third-party administrator to restrict balance billing, waiting periods, frequency limitations, and deductibles.

S. Amendment 5185, 83rd G.A., 2d Sess. (Iowa 2010); *see* S. Journal, 83rd G.A., 2d Sess. at 768 (Iowa 2010) [hereinafter S. Journal].

Senator Warnstadt then immediately offered an amendment to Senator McCoy's amendment (S-5233) that contained what became the final version of subsection 4. S. Journal, at 768; S. Amendment 5233, 83rd G.A., 2d Sess. (Iowa 2010). This was approved by voice vote. S. Journal, at 768. The amended legislation as a whole passed the Senate 49–0. *See id.*

The legislation then returned to the House. In the House, Representative Quirk filed an amendment (H-8490) as follows:

> "Covered services" means services eligible for reimbursement under the dental plan, including services not otherwise reimbursed because of applicable contractual limitations, including but not limited to balance billing, deductibles, waiting periods, frequency limitations, and maximum annual benefits.

H. Amendment 8490, 83rd G.A., 2d Sess. (Iowa 2010); *see* H. Journal, at 949.

4. Nothing in this section shall be construed as limiting the ability of an insurer or a third-party administrator to restrict any of the following as they relate to covered services:

*a.* Balance billing.

*b.* Waiting periods.

*c.* Frequency limitations.

*d.* Deductibles.

*e.* Maximum annual benefits.

*Id.* § 514C.3B(4). According to the Commissioner and the Federation, this provision was added to clarify that "covered services" would still be considered "covered" for purposes of the statute even if they were not reimbursed by the plan because of a plan limitation. The Commissioner and the Federation contend that if subsection 4 does not have this purpose, it becomes meaningless. We are not persuaded by their arguments.

As written, subsection 4 does not purport to qualify the definition of "covered services" in subsection 3—i.e., the requirement that the services be "reimbursed." Rather, it purports to clarify that insurers retain certain rights *relating to* "covered services." If this is what it does, subsection 4 is not meaningless. Thus, subsection 4(*a*) would indicate

_____

On March 23, this amendment and several others were withdrawn; another amendment was defeated by voice vote. H. Journal, at 1172–73. The House then concurred in the Senate's amendment and approved the legislation 98–1. *See id.* at 1173. The Governor signed the legislation on April 29, 2010.

It is difficult to draw definitive conclusions from this legislative history. One might infer that Senator Warnstadt's amendment was intended to accomplish something different from Senator McCoy's, or that it was just viewed as a better way of saying the same thing. One might infer that Representative Quirk's amendment would have altered the meaning of the statute. In this respect, it would have resembled several other amendments that were offered at the same time, that presumably were not supported by the dentists, and that were also withdrawn—i.e., H-8500, H-8502, and H-8519. H. Journal, at 1123–24, 1173. Or, one might infer that Representative Quirk's amendment was withdrawn because it was viewed as unnecessary (unlike those other amendments).

that an insurer still has the right to limit what a dentist can charge for a particular service above the insurance reimbursement—so-called balance billing. For example, a dental plan could reimburse $50 per teeth cleaning, but also provide that the dentist may charge no more than $60 in total, i.e., can "balance bill" no more than $10. This would be a limit "relating to" covered services. Likewise, subsections 4(*d*) and 4(*e*) would clarify that an insurer can impose a maximum fee on a service that it does not *entirely* reimburse because of a deductible or an annual maximum. Again, so read, these provisions serve a meaningful purpose.

With regard to subsections 4(*b*) and 4(*c*), it is more difficult for IDA to explain why they are needed. True, insurers would want to have the ability to continue to impose waiting periods and frequency limitations, but it is not clear how that might be jeopardized by IDA's interpretation of section 514C.3B. The most one can say is that subsections 4(*b*) and 4(*c*) clarify that insurers can still impose waiting periods and frequency limitations as a condition of covering services—*in addition to* maximum fees on services they do cover.

On the other hand, the Commissioner and the Federation's interpretation of subsection 4 suffers from the same infirmity. If the purpose of subsection 4 were to clarify that a " 'covered service' does not lose its status as a covered service because of limitations placed on reimbursement to the dentist" by the plan, as reasoned by the Commissioner, then subsections 4(*b*), (*c*), (*d*), and (*e*) serve a purpose, but subsection 4(*a*) on balance billing seems like surplusage. Balance

billing is not a limitation on reimbursement, but on the dentist's ability to bill more than the reimbursement.[4]

Furthermore, the language of subsection 4 does not suggest that every part of it *has* to have meaning. It says, "Nothing in this section shall be construed . . . ." In our experience, this kind of savings language is sometimes used by a legislature in an abundance of caution, rather than to resolve a genuine controversy that would exist if the language were not present. *See, e.g., id.* § 1.18(6)(*c*) ("Nothing in this section shall be construed to . . . [d]isparage any language other than English . . . ."); *id.* § 20.26 ("Nothing in this section shall be construed to prohibit voluntary contributions by individuals to political parties or candidates."); *id.* § 321.276(3) ("Nothing in this section shall be construed to authorize a peace officer to confiscate a portable electronic communication device from the driver or occupant of a motor vehicle."); *id.* § 461C.7(2) ("Nothing in this chapter shall be construed to . . . [r]elieve any person using the land of another for recreational purposes or urban deer control from any obligation which the person may have in the absence of this chapter to exercise care in the use of such land and in the person's activities thereon, or from the legal consequences of failure to employ such care."); *id.* § 515.103(6)(*c*) ("Nothing in this subsection shall be construed to provide a consumer or other insured with a cause of action that does not exist in the absence of this subsection."); *id.* § 524.821(1) ("Nothing in this section shall be construed as authority for any person to engage in transactions not otherwise permitted by applicable law . . . .").

---

[4]Notably, none of the nine out-of-state laws that use the "reimbursable" approach to "covered services" mention balance billing.

Thus, reading the statute as a whole, we have a straightforward directive in subsection 3 that covered services must be "reimbursed under the dental plan," followed by a somewhat cloudier statement in subsection 4 that "[n]othing in this section shall be construed as limiting the ability of an insurer or a third-party administrator to restrict any of the following as they relate to covered services." Had the legislature wanted to provide that insurers could impose maximum fees on services that were reimbursable, but were not reimbursed in a particular instance because of a plan limit, it could have said that directly.

The Commissioner and the Federation also argue that their interpretation of section 514C.3B better protects consumers by allowing insurers to set a maximum price for a dental procedure even when that procedure is not covered because of a plan limitation. However, this argument presumes that in enacting section 514C.3B, the legislature's intent was to favor the interests of consumers over those of dentists. It appears, rather, that the general assembly was trying to balance the interests of both groups. If the legislature's only goal had been to avoid a situation where insured patients might have to pay whatever the dentist charged without the benefit of a price cap, it would not have enacted section 514C.3B at all. For this reason, we are unable to give much weight to this policy argument. The only evident policy of section 514C.3B is to "prohibit[] the imposition by a dental plan of fee schedules for the provision of dental services that are not covered by the plan." 2010 Iowa Acts ch. 1179.

Based on our de novo review, we hold that a service is "covered" within the meaning of section 514C.3B only if it is actually reimbursed to some extent under the dental plan. Hence, an insurer may only impose

a maximum fee on a service when a reimbursement has been provided for that service.

## IV. Conclusion.

For the foregoing reasons, we conclude the district court erred in upholding the Commissioner's declaratory order. We accordingly reverse the district court's ruling and remand for proceedings consistent with this opinion.

**REVERSED AND REMANDED.**