# IN THE SUPREME COURT OF IOWA

No. 22–0385

Submitted March 22, 2023—Filed April 28, 2023

**ENVIRONMENTAL LAW AND POLICY CENTER, IOWA ENVIRONMENTAL COUNCIL,** and **SIERRA CLUB,**

>    Appellants,

vs.

**IOWA UTILITIES BOARD,**

>    Appellee,

and

**MIDAMERICAN ENERGY COMPANY,**

>    Intervenor-Appellee,

and

OFFICE OF CONSUMER ADVOCATE,

>    Intervenor.

---

Appeal from the Iowa District Court for Polk County, Samantha Gronewald, Judge.

Appeal from denial of petition for judicial review of the Iowa Utilities Board's order approving regulated public utility's emissions plan and budget.

**DISTRICT COURT JUDGMENT REVERSED AND REMANDED WITH INSTRUCTIONS.**

McDonald, J., delivered the opinion of the court, in which all participating justices joined. May, J., took no part in the consideration or decision of this case.

Joshua T. Mandelbaum (argued), Des Moines, for appellant Environmental Law and Policy Center.

Michael R. Schmidt, Des Moines, for appellant Iowa Environmental Council.

M. Gabriel Rowberry of Sodoro, Mooney, & Lenaghan, LLC, Omaha, Nebraska, for appellant Sierra Club.

Diana S. Machir (argued), Jon Tack, Kim Snitker, and Matthew Oetker, Des Moines, for appellee Iowa Utilities Board.

Bret A. Dublinske (argued) of Fredrikson & Byron, P.A., Des Moines, for intervenor-appellee MidAmerican Energy Company.

Jennifer C. Easler, Consumer Advocate, and Jeffrey J. Cook (until withdrawal), Des Moines, for amicus curiae Office of Consumer Advocate.

**McDONALD, Justice.**

Iowa Code section 476.6 (2020) governs changes in rates, charges, schedules, and regulations for rate-regulated public utilities. Subsection 19 of this provision requires "[e]ach rate-regulated public utility that is an owner of one or more electric power generating facilities fueled by coal" to "develop a multiyear plan and budget for managing regulated emissions from its facilities in a cost-effective manner." Iowa Code § 476.6(19)(*a*). The utility must submit biennially a plan and budget to the Iowa Utilities Board for approval. *Id.* § 476.6(19)(*a*)(1). The board "shall approve the plan" if it is "reasonably expected to achieve cost-effective compliance with applicable state environmental requirements and federal ambient air quality standards." *Id.* § 476.6(19)(*c*). In this case, the board approved a utility's biennial plan and budget. The question presented in this appeal is whether, in approving the utility's plan and budget, the board erred in failing to consider certain intervenors' evidence that the retirement of coal-fueled electric power generating facilities was a more cost-effective manner of achieving compliance with applicable state and federal environmental and air quality requirements than the utility's plan and budget.

## I.

Broadly speaking, Iowa Code section 476.6 relates to charges and rates for rate-regulated utilities. "A public utility subject to rate regulation shall not make effective a new or changed rate, charge, schedule, or regulation until the rate, charge, schedule, or regulation has been approved by the board." *Id.* § 476.6(1). Section 476.6 includes specific subsections regarding cost recovery and rate

setting in a variety of contexts. *See, e.g., Id.* § 476.6(11) (regarding the recovery of costs for natural gas procurement), (12) (regarding the recovery of costs of fuel for electric generation), (17) (regarding recovery of replacement tax costs).

Iowa Code section 476.6(19) relates to "power generating facilities fueled by coal." In enacting this provision, it was "the intent of the general assembly that the state, through a collaborative effort involving state agencies and affected generation owners, provide for compatible statewide environmental and electric energy policies with respect to regulated emissions from rate-regulated electric power generating facilities . . . that are fueled by coal." *Id.* § 476.6(19)(*a*). To advance that purpose, covered utilities are required to "develop a multiyear plan and budget for managing regulated emissions from [their] facilities in a cost-effective manner." *Id.* Covered utilities were required to submit an initial plan to the Iowa Utilities Board by April 1, 2002. *Id.* § 476.6(19)(*a*)(1). Covered utilities must file updates to the plan and budget with the board "at least every twenty-four months" thereafter. *Id.* For the purposes of this appeal, we refer to the initial plan and budget and subsequent updates as the "Emissions Plan and Budget" (EPB).

The board considers the EPB in a "contested case proceeding pursuant to chapter 17A," the Iowa Administrative Procedure Act. *Id.* § 476.6(19)(*a*)(3). The Iowa Department of Natural Resources (IDNR) and the Office of the Consumer Advocate (OCA) are required parties to the contested case proceeding. *Id.* IDNR's role is limited. IDNR "shall state whether" the EPB "meets applicable state environmental requirements for regulated emissions." *Id.* § 476.6(19)(*a*)(4). If the

EPB does not meet these requirements, IDNR "shall recommend amendments that outline actions necessary to bring the plan or update into compliance with the environmental requirements." *Id.* The Code is not as explicit regarding OCA's role in the contested case proceeding. Generally, however, OCA represents Iowa consumers in certain matters relating to utilities. *See generally id.* ch. 475A (discussing duties of the OCA). In addition to these two statutorily-required parties, other interested parties may intervene in the contested case proceeding. *See* Iowa Admin. Code r. 199—7.13(3).

The scope of the contested case proceeding is narrow. The board "shall approve" the EPB if it is "reasonably expected to achieve cost-effective compliance with applicable state environmental requirements and federal ambient air quality standards." Iowa Code § 476.6(19)(*c*). "In reaching its decision, the board shall consider whether" the EPB "reasonably balance[s] costs, environmental requirements, economic development potential, and the reliability of the electric generation and transmission system." *Id.* If the board approves the EPB, the utility can recover costs through rate increases to consumers. *Id.* § 476.6(1). If the EPB does not meet the statutory requirements, the board shall reject the EPB. *See id.* § 476.6(19)(*c*). If the board does not approve the EPB, the utility cannot recover costs through rate increases to consumers. *Id.* The evidence in support of or in opposition to the EPB generally is submitted in the form of written testimony and supporting exhibits and reports. The statute provides that the board has 180 days to approve or reject the EPB. *Id.* § 476.6(19)(*d*).

II.

MidAmerican Energy Company submitted the EPB at issue in this case in April 2020. MidAmerican's 2020 EPB did not have any additional capital expenditures but instead requested approval for operations and maintenance (O & M) expenditures associated with emissions controls previously approved at four coal-fueled power plants: Walter Scott, Jr. Energy Center Unit 3, George Neal Energy Center Unit 3, Neal Unit 4, and the Louisa Generating Station. The EPB provided projected costs for the 2020 through 2029 period and sought approval of O & M expenditures from January 1, 2020, through December 31, 2022. If the board approved the plan, MidAmerican could recover the expenditures through rate increases. If the board did not approve the plan, MidAmerican could not recover the expenditures through rate increases.

In addition to the statutorily-required parties—IDNR and OCA—the board granted several motions to intervene in the contested case proceeding. The Environmental Law & Policy Center, the Iowa Environmental Council, and the Sierra Club (collectively, "Environmental Parties") were allowed to intervene to assert their "interest in effective environmental compliance that appropriately considers and implements all options that reduce emissions while maintaining the reliability and affordability of our electric generation system." Facebook and Google (collectively, "Tech Customers") were allowed to intervene to assert "an interest in environmental compliance, as well as reliable and affordable electric energy."

The board set a contested case hearing for February 16, 2021. In accord with the board's orders, the parties exchanged written testimony and supporting exhibits. Utility specialist Scott C. Bents, testifying on behalf of OCA, stated MidAmerican failed to "perform even a basic analysis" of the relevant statutory factors. Bents also criticized MidAmerican's EPB for failing to consider the retirement of coal-fueled electric power generating facilities. Environmental Parties submitted testimony from Steven C. Guyer, an energy and climate policy specialist with the Iowa Environmental Council, and David B. Posner, an independent consultant. Guyer testified that MidAmerican's request to recover emission control expenditures for two coal-fueled generating facilities should be denied because continued operation of the facilities, in his view, would not be cost-effective. Posner testified two facilities fueled by coal should be retired through the EPB process because they operate below capacity and in an "uneconomic" way. Posner also submitted five exhibits (168 pages total) supporting his testimony. In sum, OCA and the Environmental Parties' evidence purported to show the most cost-effective way to comply with ongoing environmental obligations was to retire two MidAmerican coal-fueled generating facilities.

Approximately two weeks prior to the scheduled hearing, MidAmerican and OCA filed a joint motion and nonunanimous full settlement agreement. They requested the board cancel the scheduled contested case hearing and approve the settlement agreement. The nonunanimous settlement agreement provided that the parties agreed and stipulated that MidAmerican's 2020 EPB complied

with Iowa Code section 476.6(19). The parties further agreed "that the EPB is not an optimal forum for review of the Electric Generating Needs Forecast due to the narrow scope of the filing." The parties agreed MidAmerican would provide to the board—in an alternative proceeding—an Electric Generating Needs Forecast "to demonstrate how MidAmerican is managing its current generation resources and how it is planning for new resources in a manner that are cost-effective and prudent for its Iowa customers." The parties agreed the forecast would address plans for existing coal facilities. Environmental Parties and Tech Customers filed comments on the nonunanimous full settlement.

The board continued the contested hearing date until the end of March. Prior to the scheduled hearing, however, the board issued an order that approved MidAmerican's 2020 EPB, denied the joint motion to settle, and cancelled the contested case hearing. The board stated it had "considered the evidence presented by the parties" and decided "that there [were] no material facts about the EPB filed by MidAmerican that [were] in dispute" because "the evidence addressing other options, filed by OCA and the intervenors, *is outside the scope of an EPB proceeding* under Iowa Code § 476.6(19)." (Emphasis added.) OCA and Environmental Parties moved for reconsideration, which MidAmerican resisted. The board denied the motion to reconsider and reiterated "that the evidence filed by OCA and the Environmental Intervenors addressing these other options *was outside the scope of an EPB proceeding.*" (Emphasis added.) The board did, however, open two additional matters on separate dockets to address the issues raised by Environmental Parties.

Environmental Parties filed a petition for judicial review in the district court, and MidAmerican and OCA moved to intervene without objection. OCA and Environmental Parties contended the board erred in failing to consider their evidence during the EPB process. Specifically, OCA and Environmental Parties argued the board erred in concluding that the consideration of least-cost alternatives and retirement of coal-fueled electric generating facilities were outside the scope of the statute. This is particularly true, they argued, because the board had considered this type of evidence in previous EPB proceedings.

The district court rejected the arguments and affirmed the board's approval of the EPB. The district court held the board correctly determined it was not required to consider the evidence offered by OCA and Environmental Parties. The district court concluded that OCA and Environmental Parties' evidence—particularly the evidence regarding the retirement of coal-fueled facilities to be replaced by renewable energy—was outside the scope of the EPB proceeding. Lastly, the district court concluded the board correctly approved MidAmerican's EPB.

Environmental Parties timely appealed, and we retained the appeal. OCA filed a proof brief requesting oral argument. OCA did not, however, file a notice of appeal. Because OCA failed to file a notice of appeal, we struck OCA's brief and denied it leave to file a reply brief. We granted OCA leave to file a brief amicus curiae.

III.

Iowa Code section 17A.19(10) governs our review of the board's decision. Iowa Code § 476.6(19)(*a*)(3); *SZ Enters., LLC v. Iowa Utils. Bd.*, 850 N.W.2d 441, 449 (Iowa 2014). The standard of review differs depending on the error alleged. *Jacobson Transp. Co. v. Harris*, 778 N.W.2d 192, 196 (Iowa 2010). A party's challenge to factual findings or the sufficiency of the evidence is subject to substantial evidence review. *Id.* "Evidence is substantial if a reasonable mind would find it adequate to reach a conclusion." *Quaker Oats Co. v. Ciha*, 552 N.W.2d 143, 150 (Iowa 1996). A party's challenge to an agency's application of law to fact is subject to a highly deferential standard of review, and we will reverse only if the agency's action is irrational, illogical, or wholly unjustifiable. Iowa Code § 17A.19(10)(*i*), (*m*). In reviewing an agency's interpretation of a statute, the standard of review is contingent. "If the legislature has clearly vested the agency with authority to interpret the relevant statute, we give deference and reverse only if the agency's interpretation is 'irrational, illogical, or wholly unjustifiable.' " *Hawkeye Land Co. v. Iowa Utils. Bd.*, 847 N.W.2d 199, 207 (Iowa 2014) (quoting Iowa Code § 17A.19(10)(*l*)); *see SZ Enters.*, 850 N.W.2d at 449; *NextEra Energy Res. LLC v. Iowa Utils. Bd.*, 815 N.W.2d 30, 36–37 (Iowa 2012); *Renda v. Iowa C.R. Comm'n*, 784 N.W.2d 8, 10 (Iowa 2010). "If the agency lacks interpretive authority, 'we review for erroneous interpretations of law.' " *Hawkeye Land Co.*, 847 N.W.2d at 207 (quoting *Iowa Dental Ass'n v. Iowa Ins. Div.*, 831 N.W.2d 138, 142–43 (Iowa 2013)); *see SZ Enters.*, 850 N.W.2d at 449; *NextEra*, 815 N.W.2d at 36–37.

The parties spend a significant portion of their briefing disputing the applicable standard of review with respect to the interpretation of section 476.6(19). The board contends that its interpretation of section 476.6(19) is entitled to deference because the terms of the statute are highly specialized. Environmental Parties contend the board's interpretation of the statute is not entitled to deference because the relevant words of the statute are not highly specialized. The parties' dispute regarding the standard of review is largely due to the parties misframing the issue. While the board couches its argument as one of deference to its interpretation of the statute, it really argues for deference to its conclusion that the statutory standard has been met. The board contends, in its own words, that this court should defer to "the expertise of the board to make the determination of whether the EPB plan meets the statutory requirements." That does not pose a question of statutory interpretation. Instead, that poses a question of the board's application of law to fact, to which the board is already entitled to deference. *See* Iowa Code § 17A.19(10)(*i*), (*m*). We thus need not resolve the parties' dispute regarding whether the board is entitled to deference in its interpretation of section 476.6(19).

## IV.

Properly framed, as MidAmerican repeatedly contended during oral argument, the contested issue in this case is whether Environmental Parties and OCA's evidence was relevant. The board and MidAmerican's position is that the board correctly rejected Environmental Parties and OCA's evidence as outside the scope of the statute and thus not relevant. MidAmerican emphasizes that the

scope of proceedings under section 476.6(19) is very narrow. MidAmerican's view is that the board is faced with an up or down vote: approve the EPB submitted by MidAmerican and allow MidAmerican to recover the costs, or reject the EPB submitted by MidAmerican and disallow MidAmerican from recovering the costs. MidAmerican argues the statute does not impose "a least-cost requirement, a least-emissions requirement, a requirement to consider alternative plans, [or] a mechanism to require evaluation of the retirement of coal-fired generation of electricity in Iowa." In other words, according to MidAmerican, the statute neither allows Environmental Parties and OCA to foist alternative budgets and plans on the utility nor allows the board to consider or approve alternative budgets and plans.

We agree with MidAmerican's description of the scope and operation of the statute, but the scope and operation of the statute do not fully resolve the question of whether Environmental Parties and OCA's expert testimony was nonetheless relevant to the issues before the board. "Evidence is relevant when 'it has any tendency to make a fact more or less probable than it would be without the evidence[] and . . . [t]he fact is of consequence in determining the action.'" *State v. Thoren*, 970 N.W.2d 611, 622 (Iowa 2022) (alterations and omission in original) (quoting Iowa R. Evid. 5.401).

Three considerations lead us to conclude Environmental Parties and OCA's evidence was relevant and should have been considered by the board. First, the text of the statute supports the conclusion that Environmental Parties and OCA's evidence was relevant. Under the statute, the board was required to

determine whether MidAmerican's EPB was "reasonably expected to achieve cost-effective compliance with applicable state environmental requirements and federal ambient air quality standards." Iowa Code § 476.6(19)(*c*). In reaching its determination, the board was required to consider whether MidAmerican's EPB "reasonably balance[d] costs, environmental requirements, economic development potential, and the reliability of the electric generation and transmission system." *Id.* "Cost-effective" means "producing optimum results for the expenditure." *Cost-effective, Webster's Third New International Dictionary* (unabr. ed. 2002). "Optimum" means "the amount or degree of something that is most favorable to some end." *Optimum, Webster's Third New International Dictionary* (unabr. ed. 2002). "Reasonable" means "fair, proper, or moderate under the circumstances." *Reasonable, Black's Law Dictionary* (11th ed. 2019). All of these are words of comparison or comparative value. The statutory requirement that the board determine whether MidAmerican's EPB was "reasonably expected to achieve cost-effective compliance" and whether the EPB "reasonably balance[d]" the relevant statutory factors requires, or at least invites, comparison of alternative methods to achieve compliance with state environmental requirements and federal ambient air quality standards.

Second, a structural consideration points to the evidence being relevant. The board considers the EPB in a "contested case proceeding pursuant to chapter 17A." Iowa Code § 476.6(19)(*a*)(3). A contested case is "a proceeding including but not restricted to ratemaking, price fixing, and licensing in which the legal rights, duties or privileges of a party" are determined by an

administrative agency. *Id.* § 17A.2(5). "A contested case entitles parties affected by the agency action to an adversarial hearing with the presentation of evidence and arguments and the opportunity to cross-examine witnesses and introduce rebuttal evidence." *Greenwood Manor v. Iowa Dep't of Pub. Health,* 641 N.W.2d 823, 834 (Iowa 2002). "The underlying purpose of an evidentiary hearing is to adjudicate disputed facts pertaining to particular individuals in specific circumstances." *Id.* By calling for a contested case proceeding, the statute presupposes the parties, including intervening parties, may contest the EPB and may submit additional evidence relevant to the statutory considerations even though the evidence may address items not covered in the particular EPB at issue.

Third, the board has previously concluded the type of evidence at issue in this case is, in fact, relevant under section 476.6(19). In 2014, 2016, and 2018, MidAmerican discussed the retirement of coal-fueled generation facilities in connection with its EPB. For example, in 2014, MidAmerican witness Jennifer A. McIvor testified that:

> MidAmerican assessed the costs of its compliance options for units not currently scheduled to have controls installed. MidAmerican determined that, based on economic and other considerations, it is in the best interest of its customers to comply with the MATS [Mercury and Air Toxic Standards] and other environmental requirements by discontinuing the utilization of coal as a fuel and not installing environmental controls on five operating units. Therefore, by April 16, 2016, MidAmerican will cease burning coal at Neal Energy Center Units 1 and 2, Walter Scott Jr. Energy Center Units 1 and 2, and Riverside Generating Station.

McIvor offered similar testimony in 2016 and 2018. She explained that "MidAmerican is retiring certain coal-fueled generating units as the least-cost alternative" and identified several plants that "are to be retired."

The board argues, and the district court agreed, that the board's past practice of considering plant retirement is not relevant here because in those prior cases, plant retirement was advanced by the utility rather than an intervening party. We think the distinction is immaterial and misses the point. If facility retirement was a relevant means of "managing regulated emissions from its facilities in a cost-effective manner" when MidAmerican proposed it, it must also be relevant when offered into evidence by Environmental Parties and OCA. Iowa Code § 476.6(19)(*a*). We see no basis for determining relevance of this evidence in this proceeding based on the identity of the party offering the evidence.

We agree with MidAmerican that the intervening parties could not force alternative budgets and plans, including plant retirement, on MidAmerican. And we agree with the board that it was without the authority to approve alternative budgets and plans. We disagree, however, that Environmental Parties and OCA's evidence was not relevant in determining whether the EPB, as submitted, met the statutory requirements. Steven C. Guyer, an energy and climate policy specialist, testified that MidAmerican's emission control expenditures were not cost-effective. David B. Posner, an independent consultant, testified two facilities fueled by coal should be retired because they operate below capacity and in an uneconomic way. Utility specialist Scott C. Bents testified MidAmerican failed to

"perform even a basic analysis" of the relevant statutory factors. Bents also criticized MidAmerican's EPB for failing to consider the retirement of coal-fueled electric power generating facilities. All of this evidence is relevant and should have been considered by the board. The board might have concluded that the evidence is not particularly probative of the cost-effectiveness of MidAmerican's EPB given that the plan calls for no additional capital expenditures and contains only O & M expenses related to previously-approved capital expenditures. Or the board might conclude the evidence has great weight on the relevant considerations. What weight, if any, the board gives to Environmental Parties and OCA's evidence is to be determined by the board.

The deference afforded an agency in its application of law to fact is predicated on the assumption the agency reviewed and considered all of the relevant evidence in reaching its decision. *See JBS Swift & Co. v. Hedberg*, 873 N.W.2d 276, 280–81 (Iowa Ct. App. 2015). If, as here, the record discloses the agency did not review and consider the relevant evidence, then no deference is afforded to the agency. *See id.* An agency is entitled to reconcile relevant evidence not ignore relevant evidence. *See id.* Where the agency fails to consider relevant evidence, the agency's action is unreasonable, arbitrary, capricious, an abuse of discretion, and the product of illogical reasoning. *See* Iowa Code § 17A.19(10)(*i*), (*j*), (*m*), (*n*); *Hedberg*, 873 N.W.2d at 280–81; *Meyer v. IBP, Inc.*, 710 N.W.2d 213, 225 (Iowa 2006) ("We have said that the commissioner commits error by failing to weigh and consider all of the evidence."); *Armstrong v. State of*

*Iowa Bldgs. & Grounds*, 382 N.W.2d 161, 165 (Iowa 1986) (en banc) (stating it is reversible error for the agency to fail to "weigh and consider all the evidence").

V.

"Because the court on judicial review of agency action has no original authority to make findings of fact and declare the parties' rights, the court should remand for further specific findings when the agency's ruling does not clearly disclose a sound factual and legal basis for its decision." *Taylor v. Iowa Dep't of Job Serv.*, 362 N.W.2d 534, 537 (Iowa 1985). We reverse the district court's order affirming the board's action and vacate the decision of the board. "We remand this matter to the district court with instructions to remand this matter to the agency" for further proceedings not inconsistent with this opinion. *Carreras v. Iowa Dep't of Transp.*, 977 N.W.2d 438, 452 (Iowa 2022).

**DISTRICT COURT JUDGMENT REVERSED AND REMANDED WITH INSTRUCTIONS.**

All justices concur except May, J., who takes no part.