# IN THE COURT OF APPEALS OF IOWA

No. 19-1012
Filed August 5, 2020

**RICK PRUISMANN,**
        Plaintiff-Appellee,

**vs.**

**IOWA TANKLINES INC. and ZURICH AMERICAN INSURANCE COMPANY,**
        Defendants-Appellants.
_____

        Appeal from the Iowa District Court for Hamilton County, Kurt L. Wilke,

Judge.


        An employer and its insurance company appeal the ruling of the district

court on judicial review of the workers' compensation commissioner's decision.

**REVERSED.**



        Valerie A. Foote of Smith Mills Schrock Blades Monthei, P.C., West Des

Moines, for appellants.

        Jerry L. Schnurr III of Schnurr Law Firm, P.C., Fort Dodge, for appellee.



        Considered by Bower, C.J., and Doyle and Schumacher, JJ.

**BOWER, Chief Judge.**

Iowa Tanklines, Inc., and its insurance company, Zurich American Insurance Company,[1] appeal the ruling of the district court on judicial review, which reversed the workers' compensation commissioner's decision on Tanklines's employee Rick Pruismann's workers' compensation claim. The commissioner concluded Pruismann suffered a work-related injury and sustained a forty-five percent industrial disability as a result. The commissioner found Pruismann had "failed to carry his burden of proof that he is permanently and totally disabled as a result of the work injury under either an industrial disability analysis or under an odd-lot analysis." Because there is substantial evidence in the record to support the commissioner's factual findings and his industrial disability conclusion is not irrational, illogical, or wholly unjustifiable, we reverse the district court's ruling to the contrary and remand for dismissal of the petition for judicial review.

**I. Background Facts and Proceedings.**

Pruismann was employed by Tanklines in various capacities from 1990 to 2015, when he was laid off due to "lack of work." For the last twenty years Pruismann worked as a mechanic. The employer's job description for the position of mechanic states an employee must be able to walk, stoop, kneel, crouch, crawl, climb, and balance at heights, frequently lift and/or move ten pounds, and occasionally lift and/or move more than 100 pounds. The employee must have full range of body motion and be able to access all areas of trucks and trailers.

---

[1] For ease of reference, we will refer to the appellants collective as Tanklines or employer.

On May 3, 2007, a boom from a forklift crushed Pruismann's right ankle at work. Pruismann underwent several surgeries. In a letter dated April 16, 2013, Pruismann's orthopedic surgeon, Dr. David Inda, determined Pruismann suffered a sixteen percent permanent impairment to the right lower extremity as a result of the ankle injury.

On November 19, 2014, Pruismann injured his back while putting a power takeoff motor on the back of a truck. Pruismann immediately reported the incident and went home without finishing his shift.

On April 10, Pruismann's physical therapist noted that Pruismann was "no longer . . . limited by pain" and had "full lumbar extension." The therapist noted Pruismann had shown an improved gait and a lack of pain-related limitation in motion testing. The therapist recommended two to three additional weeks of physical therapy, with two sessions per week.

On April 15, Pruismann's surgeon, Dr. Beck, noted his improvement. Dr. Beck released Pruismann to return to regular work duties for half-day shifts on April 27. He recommended continued physical therapy and another evaluation in four weeks.

Pruismann attended his final authorized session of physical therapy on April 28. At that time, he reported seventy-five percent improvement. The therapist noted Pruismann had resumed work on light duty and had not been performing "all the tasks at work." Pruismann explained he was "sometimes" bothered by symptoms at work, especially when working under a vehicle. During the session, Pruismann lifted thirty-five pounds from floor to waist. He also carried thirty-five pounds up and down stairs five times. At the conclusion of the session, the therapist opined

Pruismann had made "large improvements" and was "returning to function at work." The therapist recommended two additional sessions of physical therapy in order to meet a "very work-relevant" performance goal of lifting tasks with fifty pounds of weight.

Pruismann returned to Dr. Beck on May 11. Dr. Beck opined Pruismann had achieved maximum medical improvement (MMI). He released Pruismann to return to work at full duty on May 12. Dr. Beck opined Pruismann sustained an eight percent whole-person impairment as a result of the back injury.

Tanklines began paying Pruismann permanent partial disability benefits coinciding with the eight percent whole-person rating issued by Dr. Beck. Forty-four weeks of such benefits were paid, at a weekly rate of $325.71.

On June 8, Pruismann was laid off for "lack of work." Pruismann filed for and received unemployment benefits, which required that he perform a job search. His unemployment job log listed six in-person contacts and notations that each place was not hiring. He filed no applications with the listed contacts.

On June 15, Pruismann filed an application for Social Security Disability (SSD) benefits, listing conditions of a right ankle fracture, herniated disc of the back, and early stage dementia. He alleged an onset of disability on November 19, 2014. Pruismann provided details of the physical demands of his former mechanic position and noted the heaviest weight he lifted was fifty pounds and that he frequently lifted twenty-five pounds.

In relation to the application for SSD benefits, Dr. Dennis Weis performed a residual functional capacity assessment and found Pruismann capable of lifting and carrying twenty pounds occasionally and ten pounds frequently; standing and

walking six hours of an eight-hour workday; sitting six hours of an eight-hour workday; occasionally climbing ramps or stairs, balancing, stooping, kneeling, crouching or crawling; and never climbing ladders, ropes, or scaffolds. A vocational assessment was made, including consideration of Pruismann's ability to perform past relevant work. It was noted Pruismann worked as a mechanic from 1995 to 2015, a work categorized as skilled, medium physical demand level work. The assessment concluded Pruismann was limited to light work by the medical examiner and, accordingly, could not return to mechanic work due to lifting and/or standing requirements. Following review, Pruismann was found disabled for purposes of SSD.

In July, Pruismann filed a petition for workers compensation.

On September 11, Pruismann presented to board-certified occupational medicine physician Dr. Sunil Bansal for an independent medical examination (IME). Dr. Bansal authored a report containing his findings and opinions dated November 24, 2015. As elements of his evaluation, Dr. Bansal reviewed Pruismann's medical records and performed a physical examination. He also interviewed Pruismann. Pruismann complained of constant left low-back pain. Pruismann reported he believed he could safely lift twenty pounds occasionally and ten pounds on a more frequent basis, could stand in one place for fifteen minutes before he needed to move about, could walk for approximately one hour before he needed to sit, could sit approximately one hour before becoming stiff and sore, and experienced difficulty with stairs and traversing uneven surfaces. Pruismann and Dr. Bansal also discussed Pruismann's prior job duties as a mechanic for Tanklines. Dr. Bansal noted Pruismann's duties required bending, twisting, lifting, and climbing onto and

under trucks. Dr. Bansal also noted Pruismann was required to replace heavy truck tires and, although an assistive machine was available, Pruismann was able to lift fifty to seventy-five pounds to perform this task before his work injury.

In his IME report, Dr. Bansal agreed Pruismann reached MMI with respect to his right ankle on March 26, 2013, and with respect to his back injury on May 11, 2015. Dr. Bansal opined Pruismann's right ankle injury resulted in a twenty percent lower-extremity impairment and eight percent whole-person impairment. With respect to Pruismann's back, Dr. Bansal agreed with Dr. Beck's MMI date of May 11, 2015, and opined Pruismann experienced a ten percent whole-person permanent impairment. Dr. Bansal also recommended permanent restrictions attributable to the "right ankle/back" conditions of no lifting over twenty pounds occasionally and ten pounds frequently; no frequent bending, climbing, or twisting; and sitting, standing and walking as tolerated, specifically recommending avoidance of sitting or walking over sixty minutes and standing over thirty minutes. Dr. Bansal opined Pruismann would ultimately require right ankle arthrodesis. He recommended Pruismann receive maintenance care of his back, including evaluation by a pain specialist to consider various treatment modalities.

Tanklines supplied Dr. Beck with a copy of Dr. Bansal's report for review. On February 24, 2016, Dr. Beck responded to the employer's counsel's inquiries and confirmed his prior opinions that Pruismann sustained permanent impairment of eight percent whole person and did not require permanent work restrictions.

The employer retained vocational evaluator, Tom Karrow, who authored a vocational rehabilitation report dated March 10, 2016. Karrow based his report upon Pruismann's medical records, interrogatory answers, and deposition transcript, as

well as information provided by the United States Department of Labor, Iowa Workforce Center, and local labor market information. Karrow noted Pruismann's work history included work as a mechanic, which he described as heavy, semi-skilled work; tractor-trailer truck driver, described as medium, semi-skilled work; dispatcher, described as light, semi-skilled work; and heavy equipment operator. Karrow wrote:

> According to the medical records, Mr. Pruismann can return to work full duty without restrictions as determined by Dr. Beck on May 12, 2015. If Mr. Pruismann chooses to do so, there are currently drop-and-hook, no-touch-load tractor-trailer truck driving positions available in the Webster City area. These positions do not require the driver to load or unload the freight, and loads are ready for the driver to transport. . . . He can also return to all of his previous occupations, specifically his most recent job as a mechanic which is considered heavy duty. Tractor-trailer truck driving, according to the U.S. Department of Labor, is considered medium duty.
> 
> Given Dr. Bansal's limitations as set forth in his [IME] of September 11, 2015, Mr. Pruismann would be able to return to drop-and-hook, no-touch-load tractor-trailer truck driving, except for the sitting restriction. Dr. Bansal indicates Mr. Pruismann should sit, stand and walk as tolerated.
> 
> There is a possibility that drop-and-hook, no-touch-load truck driving positions may be available for Mr. Pruismann that are also within Dr. Bansal's limitations if those job opportunities were in his local area and would not require over-the-road, distance driving, [t]This would limit the amount of sitting that is required. Drop-and-hook, no-touch-load tractor-trailer truck driving is considered sedentary to light duty work.

Karrow listed six employers in the labor market listing available opportunities and the average yearly pay. Karrow also noted Pruismann could perform other jobs that met his skill level and physical restrictions. Karrow opined that depending on what alternative work Pruismann chose, his earning capacity ranged from no loss of earnings to thirty-five percent loss of earnings.

On March 21, Dr. Beck wrote to Pruismann's counsel: "Because Mr. Pruismann has a history of back surgery it would be prudent to limit his work activities to infrequent stooping, kneeling, crawling, bending, or twisting. I would probably limit his repetitive lifting to [fifty] pounds and only infrequently go above that."

On April 27, Pruismann had another IME by Dr. Charles Mooney. Dr. Mooney concurred with Dr. Beck's recommended work restrictions of lifting rarely exceeding fifty pounds and limiting stooping, kneeling, crawling, bending or twisting to an occasional basis. He opined Pruismann demonstrated ten percent impairment of the whole person as a result of his November 2014 back injury.

At the June 28, 2016 arbitration hearing, Pruismann testified that when he returned to work in May 2015, he did not perform his duties in the same manner as pre-injury. Pruismann testified he worked more slowly and was more careful in his actions. He also testified he received assistance from coworkers on occasion, particularly with moving and lifting heavy Items. Pruismann testified he lacked full motion of his body and the ability to move items weighing 100 pounds. At his deposition Pruismann described difficultly and increased pain with stooping, crawling, bending, walking, and riding in vehicles. Pruismann acknowledged coworkers readily assisted each other with tasks prior to his back injury.

Pruismann testified he was not warned of an impending layoff, was not advised of any job performance issues, and was unaware of any other employees being laid off at the time of his June lay off. He acknowledged he would not necessarily be aware if employees were laid off from other terminals. He also testified he had intended to continue working for Tanklines had he not been laid off.

On February 7, 2017, the deputy filed an arbitration decision, finding Pruismann suffered a forty-five percent industrial disability, commencing on May 12, 2015, and awarded permanent partial disability benefits and select costs. The deputy concluded Pruismann failed to make a prima facie case of total disability and that a penalty award was not appropriate.

Pruismann filed an intra-agency appeal to the workers' compensation commissioner. On June 8, 2018, the commissioner issued his final decision, noting,

> [Pruismann] asserts on appeal that the deputy commissioner erred in finding [he] sustained [forty-five] percent industrial disability as a result of the work injury. [Pruismann] asserts the award for industrial disability should be increased substantially or, in the alternative, claimant asserts he should be awarded permanent total disability benefits under either an industrial disability analysis or under an odd-lot analysis.

The commissioner adopted and affirmed the deputy's findings and "well-reasoned analysis," concluding Pruismann experienced a forty-five percent industrial disability.

Pruismann sought review of the commissioner's industrial-disability determination and the agency's rejection of his claim of total permanent disability. The district court concluded the commissioner's decision "was without substantial evidence, and the charge that [Pruismann] is an odd-lot employee is supported by substantial evidence."

Tanklines appeals, contending the district court employed an incorrect standard of review.

**II. Scope of Review.**

"Judicial review of workers' compensation cases is governed by Iowa Code chapter 17A. On our review, we determine whether we arrive at the same conclusion as the district court." *Warren Props. v. Stewart*, 864 N.W.2d 307, 311 (Iowa 2015).

**III. Discussion.**

Whether Pruismann suffered a forty-five percent industrial disability is a mixed question of law and fact. *See Neal v. Annett Holdings, Inc.*, 814 N.W.2d 512, 525 (Iowa 2012). A challenge to the agency's ultimate conclusion is a challenge to the agency's application of law to facts. *See Meyer v. IBP, Inc.*, 710 N.W.2d 213, 219 (Iowa 2006). We review the commissioner's findings of fact for substantial evidence and we "must engage in a 'fairly intensive review of the record to ensure that the fact finding is itself reasonable.'" *Neal*, 814 N.W.2d at 525 (citation omitted). But "in considering findings of industrial disability, we recognize that the commissioner is routinely called upon to make such assessments and has a special expertise in the area that is entitled to respect by a reviewing court." *Id.* at 527. "Because the challenge to the agency's industrial disability determination challenges the agency's application of law to facts, we will not disrupt the agency's decision unless it is 'irrational, illogical, or wholly unjustifiable.'" *Id.* at 526 (citation omitted).

Dr. Beck released Pruismann to return to work with restrictions, supporting a finding that Pruismann was not precluded from returning to work. Two IMEs concluded Pruismann suffered only partial permanent whole-body impairment. And a vocational evaluator found there were jobs Pruismann could perform and

opined that Pruismann's earning capacity ranged from no loss of earnings to thirty-five percent loss of earnings.[2]

The district court erred in reversing the commissioner's determination. The commissioner's findings of fact with respect to the extent of Pruismann's industrial disability are supported by substantial evidence and the commissioner's application of those facts in holding Pruismann suffered a forty-five percent industrial disability is not irrational, illogical, or wholly unjustifiable. We reverse the judgment of the district court.

**REVERSED.**

---

[2] The district court erred in making its own findings of fact:

> After examining the transcript, the exhibits, the briefs from counsel, and considering [Pruismann's] age, lack of education, *lack of transferable job skills*, and his physical detriments, enhanced by his work back injury *which preclude his employment as a mechanic*, . . . .

(Emphasis added.) "[T]he question on appeal is not whether the evidence supports a different finding than the finding made by the commissioner, but whether the evidence 'supports the findings actually made.'" *Meyer*, 710 N.W.2d at 218 (citation omitted).